## Anne M. LOGUE
### v.
## INTERNATIONAL REHABILITATION ASSOCIATES, INC.

Civ. A. No. 85–3010.

United States District Court,
W.D. Pennsylvania.

April 14, 1988.

David B. Mulvihill, Mansmann, Cindrich & Titus, Pittsburgh, Pa., for plaintiff.

Francis M. Milone, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

### FINDINGS and OPINION

GERALD J. WEBER, District Judge.

This is a sex discrimination in employment case in which the Court in a non-jury trial found for plaintiff. On appeal the Court of Appeals found that plaintiff had established a prima facie case, 837 F.2d 150. We found, and the Court of Appeals agreed "that some of the reasons offered by the defendant for not retaining Logue were clearly pretextual ... The district court rightfully concluded that some of IRA's reasons for firing Logue were beyond credence." (P. 155, fn. 5)

The Court of Appeals however requires that we must consider and discuss all non-discriminatory reasons offered by IRA. There were two other profferred business reasons which we did not discuss or make specific findings on:

1. the restructuring of management for the state of Ohio;

2. the superior qualifications of Ross for the newly structured position of branch manager at Columbus.

These are primarily questions of the credibility of the witnesses who profferred them. The defendant's principal witnesses to these reasons were Rozanski and Hamilton. These were the same witnesses who advanced reasons which the trial court found clearly pretextual, a finding the Court of Appeals apparently agreed with.

The Court of Appeals stated, however, "the falsity of one does not necessarily justify finding the remaining articulated reasons pretextual." (P. 155)

Nevertheless, the Court may follow the ancient legal maxim *falsus in uno, falsus in omnibus* in weighing the testimony, as it frequently does in instructing juries. Not only in the matters we specifically found false, but throughout the trial, the Court found the testimony of Rozanski and Hamilton to be incredible on many matters other than those upon which we made our earlier findings. As noted by the Court of Appeals, the trial judge has the discretion to evaluate the credibility of witnesses. The trial judge in this case heard the testimony given, observed the witnesses and considered other related evidence. From this we make one conclusion: Rozanski and Hamilton were not credible witnesses and this applies to their testimony throughout the trial. It applies to the issues on which we made no prior specific findings as well as our determination that they were not credible on the other issues.

■ It is important to note in this context that all the Defendant's proffered business reasons are closely interrelated and cannot be strictly compartmentalized for analysis. For example, the Court of Appeals notes that we did not address the effect of Defendant's restructuring on Plaintiff's job. However we did specifically conclude that a principal feature of that restructuring, the creation of a Cincinnatti office, was a complete and utter sham. While we now address those proffered business reasons which we did not clearly address before, we cannot ignore our prior findings on the other interrelated aspects, particularily where the same witnesses were previously found to be unworthy of belief.

While it is true that Defendant restructured its Ohio operation, this basically meant that Ohio was divided into two territories with branch offices in Columbus and Cleveland. This was no reason for the discharge of Plaintiff, who formerly had responsibility for the whole state. It provided opportunity for two branch managers where formerly there was one.

The restructuring in Ohio did not result in the abolition of plaintiff's job. Instead it created a second and similar position. It reduced the Columbus territory and required supervision of fewer employees. The somewhat confusing and incredible testimony of Hamilton and Rozanski concerned dividing Ohio into three territories, with branch offices located in Columbus, Cleveland and Cincinnati, with plaintiff being made manager of the Cincinnati branch office. Of course there never were any arrangements to open a Cincinnati office, budgetary or otherwise and we have previously found all matters concerned with a Cincinnati office to have been pretextual. Hamilton's explanation about the two year delay in opening a Cincinnati office was that when the position was refused by Plaintiff it required a two year search to find an equally qualified person to fill this position. This shows the patent incredibility of this reason. As we conclude in our prior bench opinion, plaintiff did not resign her position, she was terminated.

Both Hamilton and Rozanski testified that Plaintiff was qualified to be a branch manager in Cincinnati and that they hoped she would accept the position. There was no branch office in Cincinnati at the time, no budgetary or other provisions were made for it, and one was not opened for two years. Plaintiff was abruptly terminated. Contrary to their usual practice with displaced employees, Hamilton and Rozanski signed a staffing form noting that they could not recommend rehiring plaintiff. This is anomolous because of Plaintiff's excellent record of performance in all the positions which she had held in the organization and Defendant's claim that she was qualified for the illusory Cincinnati job.

Rozanski had dictated a memo to Ross in which he advised Ross that he would be given plaintiff's position but not her title. He directed the typist not to file this in the correspondence file contrary to usual office procedure, because there "might be trouble." We believe the testimony of the witness Helen Lane, who so testified, and we disbelieve the testimony of Rozanski that no such letter was written. Such testimony leads to an inference of a guilty mind with respect to the discharge of plaintiff.

The structure of each branch office was somewhat changed; each branch supervised fewer employees, the territory was reduced, and a greater emphasis was to be put on marketing. None of these is material, when defendant's superiors considered Plaintiff qualified for a similar position as branch manager in Cincinnati. She would there have managed the same type of office organization as called for by the reorganization for Columbus or Cleveland. Finally, the differences in the reorganized structure are minimal, putting more emphasis on sales and less on other aspects. Plaintiff had extensive experiences in all aspects of the reorganized office set-up.

We therefore find that the reorganization of Ohio and its branch offices, although it did occur, had no valid relation to plaintiff's discharge and served as a pretext to explain plaintiff's discharge.

With respect to the allegedly superior qualifications of plaintiff's replacement, we find these pretextual. Plaintiff had superior qualifications to Ross in years of service, 5¼ years to 13 months. Plaintiff had experience as a vocational specialist, rehabilitation supervisor, account representative and branch office manager. Ross had experience only as vocational specialist and account representative. Ross had held only two of these positions, and for a much shorter time than Plaintiff.

Plaintiff had more experience in marketing for Defendant than did Ross. She had been involved with marketing in Ohio for 2½ years, both as an account representative and as branch manager. Ross had been an account representative for 9 months.

Plaintiff had been a branch office manager in Columbus for 1½ years. There was no prior branch in Ohio, plaintiff was assigned the task of setting up a Branch Office for all of Ohio. She did well in this difficult assignment, achieving a profit contribution of $142,000 in the first year of operation, being 99% of the budgeted profit figure. Two weeks before her discharge she received a discretionary incentive bonus based on her personal performance and the profitability of the Columbus office for the prior year. It should be noted that Rozanski, who denigrated Plaintiff's performance in his trial testimony, was the person who rated Plaintiff and qualified her for the bonus.

Plaintiff did not receive a formal evaluation as Branch Manager, contrary to Defendant's normal practice. She was never criticized or reprimanded either for her performance or that of the Columbus Office. She was orally commended by Hamilton as to the good job she was doing in Columbus. Hamilton noted this commendation in the margin of a report of plaintiff in April 1982. He acknowledged the great difficulties in establishing a new branch office for the whole state of Ohio. The Columbus Office grew significantly in terms of the number of employees, and it was finally recognized that one branch office was insufficient for the size of the territory.

Hamilton attempted to rely on criteria called PR (production rate) and HCW (hours per case per week) as a justification for the discharge. These statistics are confusing and can be interpreted in a number of ways. They are, as Hamilton acknowledged, affected by the growth of an office, and the Columbus office grew considerably in the terms of number of employees. Indeed Hamilton reassured Plaintiff during this period that the company recognized that this was a unique situation.

Rozanski testified that he did not rely on any of the objective criteria, education, years of service, overall company experience, service experience, marketing experience, or management experience. He ignored all of these objective criteria. He said he relied solely on marketing skills. While Ross possessed excellent marketing skills, so did plaintiff and she had performed those functions for years as an account representative in Ohio, and had supervised this function as Branch Manager in Columbus, where Ross worked under her supervision. Ross had the benefit of Plaintiff's prior marketing work in Ohio. The circumstances under which he worked cannot be compared with Plaintiff's skill in these functions, particularly with the more favorable attitude that developed toward workmens compensation claim in Ohio during the period in which she was manager. Also, Ross had no prior experience as manager of a branch office, overseeing all its functions. We also find defendant's "qualification" reasons inconsistent with its opinion that Logue was fully qualified to take over the management of a proposed new branch office in Cincinnati.

These factors, plus the inconsistency of much of defendant's testimony, plus the basic determination of the lack of credibility of defendant's principal witnesses, cause us to conclude that the alleged qualifications explanation was a pretext for intentional sex discrimination against plaintiff.

This Court having found all of the defendant's reasons for the discharge pretextual, the burden remains on the plaintiff to show that she was the victim of discrimination. As the Court noted in the final argu-

ment before the Court rendered its oral opinion (J.A. p 467) the manner in which this may be accomplished is set forth in *Texas Department of Community Affairs v. Burdine* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981):

> The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. See *McDonnell Douglas [Corp. v. Green],* 411 U.S. [792], at 804–805 [93 S.Ct. 1817, 1825–1826, 36 L.Ed.2d 668 (1973)].

We therefore find that plaintiff's discharge was based on discrimination by reason of her sex.

The foregoing opinion in addition to the bench opinion of this Court represents the findings of fact and conclusion of law of the trial court under Fed.R.Civ.Proc. 52.

For the reasons stated above and in our prior bench opinion, we conclude that *all* of Defendant's profferred business reasons were mere pretext for intentional discrimination against Plaintiff on the basis of sex, and Plaintiff is therefore entitled to Judgment. The prior judgment, vacated by the Court of Appeals, included back pay and prejudgment interest in an amount agreed upon by the parties, as well as reinstatement. On remand the parties have not addressed themselves to damages, and we do not know if Plaintiff has suffered any further loss in the absence of reinstatement. Also, Plaintiff may be entitled to additional interest for this period. We will therefore require counsel to confer concerning damages. If the parties are agreed they shall submit a stipulation and form of order for the entry of judgment on or before May 2, 1988. If the parties cannot agree, Plaintiff shall submit a form of order for entry of judgment and a short statement of the damages computation on or before May 2, 1988, and Defendant shall contemporaneously file objections to the damages computations.