**Henry WOLF, Plaintiff–Appellant,**

v.

**BUSS (AMERICA) INC.,
Defendant–Appellee.**

No. 95–1790.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 27, 1995.

Decided Feb. 16, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied April 17, 1996.*

---

* Judges Flaum, Ripple, Rovner, and Diane P. Wood voted to grant a rehearing en banc.

Aram A. Hartunian (argued), Hartunian & Associates, Chicago, IL, for Henry Wolf.

C. Jackson Darnall, Kevin R. Krantz (argued), Darnall, Polachek & Associates, Addison, IL, for Buss (America) Inc.

Before WOOD, Jr., ROVNER, and EVANS, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Alleging that his dismissal constituted unlawful age discrimination, Henry Wolf filed suit against his former employer, Buss (America) Inc. ("Buss America") pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* The district court granted Buss America's motion for summary judgment after it concluded that Wolf had failed to produce sufficient evidence demonstrating that Buss America's proffered reasons for his termination were pretextual. Upon review, we affirm the result achieved in the district court.

## I. BACKGROUND

Wolf, a Swiss national, was born on November 27, 1938. He began working as an engineer for Buss AG, a Swiss company, in 1961. Buss AG manufactures and sells equipment used in the plastics industry. By all accounts, Wolf performed his job admirably and was promoted first to service manager and later to chief service engineer. Wolf's duties included overseeing the installation and start-up of production plants around the globe. He also rendered various consulting services to Buss AG's customers.

In light of Wolf's expertise and experience, the appellee—Buss AG's U.S. subsidiary—asked Wolf to transfer to the United States. Wolf initially declined, but negotiations were eventually entered into and Wolf subsequently began working for Buss America as a service engineer, at the age of 50, in September 1989. Then, in December 1991, when he was 53 years old, Wolf's employment with Buss America was terminated. Buss America asserted that a financial downturn compelled it to reduce its staff of service engineers from three to two. One of the remaining service engineers, George Bracikowski, was 34 years of age at the time of Wolf's termination. The third service engineer, Klaus Erlewein, was 51 years old at the time of Wolf's dismissal.

Wolf subsequently filed suit under the ADEA. While Wolf concedes that the financial downturn presented a legitimate reason to fire *someone*, he contends that Buss America's decision to fire him, and not Bracikowski, constituted an act of unlawful age discrimination. Buss America responded by filing a motion for summary judgment, in which it denied Wolf's allegations of discriminatory intent and proffered several nondiscriminatory reasons for Wolf's termination. Wolf filed a response, disputing Buss America's stated reasons. The district court granted Buss America's motion for summary judgment after it concluded that Wolf had failed to fully and adequately address the reasons proffered for his dismissal. This appeal followed.

## II. STANDARD OF REVIEW

■ We review the district court's grant of summary judgment by considering all factual inferences in the light most favorable to the nonmoving party (herein Wolf) and determining *de novo* whether there exists any genuine issue of material fact requiring submission of the case to the finder of fact or whether judgment as a matter of law was appropriate. Fed.R.Civ.P. 56(c); *Colburn v. Trustees of Indiana Univ.*, 973 F.2d 581, 585 (7th Cir.1992). We note further that "[t]his standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Sarsha v.*

*Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993) (citations omitted).

## III. DISCUSSION

 In order to show a violation of the ADEA, Wolf must demonstrate that his age was "a determining factor" in Buss America's decision to terminate his employment. *Smith v. Great Am. Restaurants, Inc.*, 969 F.2d 430, 434 (7th Cir.1992) (citations omitted). Wolf need not demonstrate that age was the sole reason for his discharge; rather, he need only prove that but for Buss America's motive to discriminate against him on the basis of his age, he would not have been fired. *La Montagne v. American Convenience Prods., Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984) (citation omitted).

 There are two manners of proof available to an employee in this regard. First, the employee may allege that direct evidence proves that age was a determining factor in the employer's decision to terminate him. *Id.* (citations omitted). Alternatively, the employee may proceed under the indirect, burden-shifting method of proof first articulated for use in Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted for use in age discrimination cases. Since Wolf has not introduced any direct evidence which might indicate that Buss America discriminated against him on the basis of age, Wolf's suit must rely on the indirect, burden-shifting method.

 At the first stage of this method, the burden rests upon the employee to establish the four elements of a prima facie case of age discrimination. In a reduction in force case, such as this one, the employee must show that: (1) he was in the protected class (persons between the age of 40 and 70); (2) he was doing his job well enough to meet his employer's legitimate expectations; (3) in spite of his performance, he was discharged or demoted; and (4) the employer treated other persons, not in the protected class, more favorably. *Oxman v. WLS–TV*, 846 F.2d 448, 455 (7th Cir.1988) (citations omitted). Buss America concedes, for the pur-

pose of resolving its summary judgment motion, that Wolf can establish his prima facie case.

 The establishment of a prima facie case creates a rebuttable presumption of discrimination. *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 426 (7th Cir.1989) (citations omitted). The burden of *production*[1] then shifts to the employer to articulate a legitimate and nondiscriminatory reason for the employee's termination. *Id.* If the employer is able to dissolve the presumption of discrimination in this fashion, the burden shifts back to the employee to show, by a preponderance of the evidence, that the proffered reasons are pretextual. *Sarsha*, 3 F.3d at 1039 (citation omitted). Pretext means more than a mistake on the part of the employer; pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). There are two methods of showing pretext: "Pretext may be established directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Sarsha*, 3 F.3d at 1039 (citations omitted).

 Wolf has not introduced any direct evidence of pretext. We must therefore determine whether Wolf has, viewing the evidence in the light most favorable to him, succeeded in showing that Buss America's proffered reasons are not credible. This showing may be made by introducing evidence that demonstrates that (1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the discharge; or (3) the proffered reasons were insufficient to motivate the discharge. *Weihaupt*, 874 F.2d at 428 (citations omitted).

 It is not sufficient, however, for the employee to show that the employer acted incorrectly or undesirably by firing him; the employee must show that the employer did not honestly believe in the reasons it gave for firing him. *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373

---

1. The burden of proof, however, always remains with the employee.

**920**

(7th Cir.1992) (citations omitted). In an ADEA case, we "do[ ] not sit as a super-personnel department that reexamines an entity's business decisions. The question is not whether the [employer] exercised prudent business judgment, but whether [the employee] has come forward to refute the articulated, legitimate reasons for his discharge." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986) (internal citations omitted), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987).

▮ In this case, Buss America proffered six primary reasons in its motion for summary judgment to justify its decision to terminate Wolf, instead of either of the two other service engineers: (1) Wolf had trouble with the way things were done at Buss America and made complaints to the parent company; (2) Wolf was dilatory in obtaining a home telephone; (3) Wolf failed to write his service reports in a timely fashion; (4) Wolf behaved arrogantly towards customers; (5) Wolf failed to call Buss America often enough while he was out on service calls; and (6) Wolf was excessively talkative. On their face, these reasons are legitimate and non-discriminatory and thus sufficient to dissolve the presumption of discrimination.

▮ Therefore, Wolf must raise an issue of fact regarding each of the reasons proffered for his dismissal or suffer the affirmance of the district court's grant of summary judgment. *See Russell*, 51 F.3d at 69 ("The fact that some of [the employer's proffered] reasons were successfully called into question by [the employee's] deposition or affidavit does not defeat summary judgment if at least one reason for [the adverse employment action] stands unquestioned."). Wolf may still prevail, however, even if he does fail to cast doubt upon all of the proffered reasons: "There may be cases in which the multiple grounds offered by the defendant for the adverse action of which the plaintiff complains are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment." *Id.* at 70.

▮ After reviewing the record, we conclude that Wolf has raised material issues of fact regarding several of Buss America's proffered reasons. We further conclude, however, that these doubtful reasons are neither "so intertwined," nor "so fishy and suspicious" as to call the remaining reasons into doubt. *Id.* Accordingly, we find that Wolf has failed to carry his burden.

### A. Credible Reasons for Wolf's Dismissal

#### 1. Wolf's Complaints to Buss AG

Buss America first contends that its decision to terminate Wolf was partially justified in light of Wolf's dissatisfaction with the conditions at Buss America and Wolf's ensuing complaints to Buss America's parent company, Buss AG. More particularly, Buss America averred that Wolf reported directly to certain individuals at Buss AG and made unfavorable comparisons between Buss America and Buss AG's respective operations. Wolf admits that he contacted Buss AG on at least two occasions, but he asserts that his criticisms were constructive, and that both contacts resulted in favorable changes at Buss America.

By claiming that his suggested changes were ultimately beneficial, however, Wolf misses the point. Buss America does not claim that it was particularly troubled by the *content* of Wolf's communications to Buss AG. Rather, Buss America alleges that it was the *occurrence* of these communications which it found troubling. The fact that Wolf conducted these communications indicated, in Buss America's view, that Wolf had failed to adequately sever his ties with Buss AG—this situation, in turn, allegedly hindered Wolf's ability to adapt to the new environment of Buss America.

Wolf further adds that he was not criticized at the time he made his suggestions—approximately nineteen months before his dismissal. Buss America does not argue, however, that Wolf's actions were so opprobrious as to call for his immediate dismissal. Rather, Buss America asserts that it was only after an economic downturn—a development which Wolf does not dispute—forced it to fire one of its three service engineers that it dismissed Wolf as the least desirable of the three. Therefore, we conclude that Wolf has

failed to raise an issue of material fact regarding this reason.

### 2. Wolf's Failure to Write Timely Service Reports

Buss America also asserts that Wolf failed to complete his required service reports in a timely fashion. Wolf wholly denies this allegation, claiming that he completed his service reports on a daily basis. The district court, however, found that Wolf had failed to show pretext on the issue of the propriety of his service reports in light of Wolf's admitted practice of completing his reports in German instead of in English. In making this finding, however, the district court went beyond the face of Buss America's motion for summary judgment and Local Rule 12(m) statement of material facts, and looked to the deposition testimony of Frank Rauch, Buss America's service manager. In his deposition, Rauch testified that Wolf's German-language reports were largely useless to Buss America and that he had asked Wolf many times to write his reports in English. Wolf argues that the district court erred by looking beyond the parties' pleadings to the record of the case in this fashion.

As Buss America correctly argues, however, Rule 56(c) of the Federal Rules of Civil Procedure does not limit a district court's consideration of a summary judgment motion to the content of the parties' pleadings. Rather, Rule 56(c) directs the court to examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *See also Board of Nat'l Missions of Presbyterian Church in the United States v. Smith*, 182 F.2d 362, 364–65 (7th Cir.1950) ("The fact that the [summary] judgment was granted on a reason different from that assigned by the defendant is immaterial, where, as here, the motion was properly granted on the undisputed facts shown and on an issue presented by plaintiff's complaint."); *Wilder v. Prokop*, 846 F.2d 613, 626 (10th Cir.1988).[2]

Rauch's deposition, which the district court was privileged to consider, indicates that Wolf's practice of writing his reports in German was viewed as problematical by Buss America, and that this concern was communicated to Wolf. Wolf has admitted to writing his reports in German, at least initially. It seems clear to us that the completion of Wolf's reports in an unacceptable language would adversely impact the "timeliness" of those reports as they would not be immediately comprehensible to most of Buss America's other employees. Consequently, we conclude that Wolf has failed to show pretext on this issue.

### B. Reasons for Wolf's Dismissal Which are Not Credible

Wolf has not, however, utterly failed in his endeavor to raise issues of material fact regarding Buss America's reasons for his dismissal. We find that Wolf has succeeded in calling the remaining four reasons proffered by Buss America into doubt.

---

2. The dissent disagrees with this summation of the law and cites in support *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989), and *Hartman v. Board of Trustees of Community College Dist. No. 508*, 4 F.3d 465 (7th Cir.1993). In *Malhotra*, we reviewed the dismissal of a suit for ethnic discrimination. The district court had granted the defendant's motion for summary judgment after concluding that the plaintiff had failed to establish a threshold showing of discrimination. We reversed, however, because the defendant's motion had solely addressed the purely legal ground that the claim was time-barred. As we stated: "[I]t was not Malhotra's burden to produce evidence concerning claims as to which [the defendant's] sole ground for summary judgment was the statute of limitations." *Malhotra*, 885 F.2d at 1310. In *Hartman*, we likewise criticized the district court's decision to dismiss a claim on the merits where the defendants' motion for summary judgment had contested the claim from a purely legal standpoint: "Because defendants' arguments did not attack the factual predicate of Hartman's claim, she was under no obligation to improve on it by adducing more specific facts, and the claim should not have been dismissed for her failure to do so." *Hartman*, 4 F.3d at 469.

These cases are to be distinguished from the present matter. Here, Buss America's motion for summary judgment squarely addresses the merits of Wolf's claim. Faced with such a motion, a district court is privileged to consider any additional evidentiary material contained in the record which bears on the claim.

### 1. Wolf's Dilatoriness in Obtaining a Home Telephone

Buss America argues that its decision to terminate Wolf was driven, in part, by Wolf's failure to obtain a telephone at home when he was told to do so. Wolf admits that he was told to obtain a home telephone on at least two or three occasions, and that it nonetheless took him approximately five or six months, after he was hired, to do so. Wolf justifies his delay by claiming that, before he obtained a home telephone, Buss America never contacted him on those occasions when he did have access to a phone— e.g., when he stayed at a hotel—and that Buss America never contacted him at home after he obtained a phone. Wolf claims, moreover, that he had concluded, in light of the frequency with which he was away from home and the allegedly casual manner in which Buss America made its repeated requests, that his having a home telephone was not important to Buss America.

Buss America, in turn, argues that it did regard a home telephone as important. Rauch testified in his deposition that Wolf's lack of a phone forced him to travel to Wolf's home on several occasions in order to communicate with Wolf.

■ As we have previously noted in a similar situation, "[w]e cannot resolve the conflict between these two positions without deciding which side to believe. On summary judgment, a court can neither make a credibility determination nor choose between competing inferences. Rather, these are functions for a jury." Sarsha, 3 F.3d at 1041 (internal citations omitted). Thus, we conclude that there does exist a genuine question regarding whether the failure to prompt-

ly obtain a home telephone was sufficient, in part, to motivate Wolf's discharge.

### 2. Wolf's Arrogance to Customers

■ Buss America additionally contends that Wolf exhibited an "arrogant" attitude about Buss America's products and himself to its customers. In his Local Rule 12(n) response, Wolf generally denied that he was ever arrogant to customers about anything. The district court, however, found that Wolf had failed to raise a question of material fact on this issue because he failed to deny Rauch's contention, contained in his deposition, that Wolf had acted arrogantly by leaving a worksite on one or more occasions when a customer's representative failed to promptly meet with him. In effect, the district court applied sub silentio its Local Rule 12(n)[3] and concluded that Wolf had admitted to leaving worksites by failing to specifically deny this charge.

■ Although we have upheld the strict application of Local Rule 12(n), see Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992), we conclude that the district court has erroneously applied it in this instance. Under the operation of Local Rule 12(n), the party opposing summary judgment is deemed to have admitted, through failure to controvert, only those facts set forth in the moving party's Rule 12(m) statement. Here, Buss America's Rule 12(m) statement avers only generally that Wolf exhibited arrogance towards customers; the specific contention that Wolf arrogantly left worksites is contained in Rauch's deposition. Thus, Wolf's general denial is all that is needed to raise a question of material fact on this issue.[4]

---

3. Local Rule 12(n) provides, in pertinent part: "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."

4. This situation is to be distinguished from the one involving Wolf's failure to write timely service reports, discussed supra. It is true that there we upheld the district court's decision to look to the record as a whole in order to reach the conclusion that writing reports in German was an admission of untimeliness. However,

that instance involved an express admission by Wolf in his deposition that he had written his reports in German, at least initially. If Wolf had also admitted in his deposition to leaving worksites when not promptly met by customers, then the district court would also have been privileged to consider this fact. Wolf did not, however, make any such express admission and, since Buss America's Rule 12(m) statement does not raise this specific issue, Wolf's failure to controvert it in his Rule 12(n) response cannot serve as an admission.

### 3. Wolf's Failure to Phone-in When on Service Calls

Buss America further argues that Wolf failed, despite frequent requests, to regularly phone the office while he was out on service calls. Buss America acknowledges that Wolf occasionally phoned, particularly when he needed to order parts, but it claims that Wolf repeatedly ignored the company's request to phone on a regular basis—whether or not a problem was encountered. Wolf disagrees and claims in his Rule 12(n) response that he "always" called the office after completing an out-of-town assignment unless he happened to finish his assignment after Buss America's office had closed, in which case he would call the next day.

The district court, however, declined to credit Wolf's denial after it found that it was contradicted by Wolf's deposition testimony. When asked whether Rauch had ever raised the issue of phoning-in while on service calls, Wolf responded:

> We had once a friendly chat, and then he said "you have to learn to use the telephone." I laughed and said, "why," and then he said to me, "Henry, sometimes we will be glad if you would phone us what's going on."

> And then I returned him. I remember that one. I returned him, "look, Frank, you sitting in your office five, ten centimeters in front of your phone. I'm in the workshop, black, greasy, oily, why can you not phone me, please."

In his brief before this court, Wolf claims that this testimony related only to one specific instance and that it does not contradict his Rule 12(n) statement.

Viewing this testimony in the light most favorable to Wolf, as we must, we agree. The testimony quoted above is simply too vague for us to arrive at any definite conclusion as to its meaning. It may well be referring to a single instance in which Wolf failed to call because he did not finish his assignment until after Buss America's office had closed for the day. Accordingly, we find that Wolf has also raised a question of material fact on this issue.

### 4. Wolf's Excessive Talkativeness

Buss America last alleges that Wolf's presence at the office was overly disruptive due to Wolf's proclivity for storytelling. Wolf responds by stating that he was away from the office for the majority of the time and that, in any event, he was no more conversational than anyone else at the office. In support of their respective positions, the parties offer nothing more than the strength of their word. As is the case regarding the importance of promptly obtaining a home telephone, we cannot resolve this conflict without making a credibility determination. *Sarsha,* 3 F.3d at 1041.

## IV. CONCLUSION

Wolf has successfully demonstrated that genuine issues of material fact exist regarding four of the six reasons proffered by Buss America for his dismissal. We conclude, however, that Wolf has ultimately failed to carry his burden of showing pretext because the four reasons which he has successfully called into question are neither "so intertwined," nor "so fishy" as to call the remaining two reasons into doubt. *Russell,* 51 F.3d at 70. We recognize that Buss America has not contended that the two remaining reasons would be sufficient, standing alone, to justify Wolf's dismissal. Indeed, Buss America was aware of the two reasons it now cites for well over a year before Wolf's termination. These two reasons only became sufficient after Buss America was hit by an economic slowdown that necessitated the firing of one of its three service engineers. Thus, the "intertwining" at work here takes place not among the six reasons *per se,* but rather among these reasons and the economic slowdown.

It is true that Buss America chose to fire Wolf instead of Bracikowski, the youngest service engineer. Wolf, however, has not produced any evidence that Bracikowski engaged in the same behavior as was proffered for Wolf's dismissal, nor has Wolf challenged those attributes of Bracikowski's which Buss America labeled as positive—namely, his enthusiasm, eagerness, and basic mechanical skills. Furthermore, we feel that it is not insignificant that Wolf was initially hired by

Buss America at the age of 50—fully ten years into the protected age group. This fact, although not conclusive, is somewhat indicative of Buss America's lack of discriminatory intent.

 The picture that emerges here is of an employee who was, overall, competent and diligent. Unfortunately, Wolf also possessed—in Buss America's view—a few, minor flaws. These flaws were not serious enough to call for Wolf's immediate dismissal, but when Buss America was faced with an undisputed economic slowdown these flaws naturally figured into Buss America's decision regarding which service engineer to let go. The facts which accompany age discrimination cases are never heartwarming. The ADEA, however, is not a form of job insurance for older employees. "The market, like the jungle to which it is sometimes compared, is pitiless. Nothing in the age discrimination law provides tenure to competent older workers. They can be let go for any reason or no reason, provided only that the reason is not their age." *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 271 (7th Cir.1993).

For the reasons set forth above, the decision of the district court to grant Buss America's motion for summary judgment is affirmed.

AFFIRMED.

ILANA DIAMOND ROVNER, Circuit Judge, dissenting.

In *Russell v. Acme–Evans Co.*, 51 F.3d 64 (7th Cir.1995), this court considered a discrimination claim to which the employer had offered a number of seemingly independent, non-discriminatory explanations. Despite the plaintiff's success in rebutting some of the company's reasons, we upheld summary judgment because the surviving reason—that the employer was generally dissatisfied with the plaintiff's job performance—had not been rebutted. *Id.* at 69. I joined Chief Judge Posner's opinion in that case because it was clear to me that the employer's general dissatisfaction with Russell's job performance had motivated its actions, and because the opinion recognized that future plaintiffs may

survive summary judgment by rebutting some but not all of the proffered reasons for an adverse employment action. As *Russell* explained, "[t]here may be cases in which the multiple grounds offered by the defendant for the adverse action ... are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment." *Id.* at 70. The majority today purports to apply *Russell* in affirming a summary judgment in spite of its finding that the plaintiff rebutted four of the six proffered reasons for his termination. The majority finds *Russell*'s caveat inapplicable here because it views the four rebutted reasons as "neither 'so intertwined,' nor 'so fishy' as to call the remaining two reasons into doubt." (*Ante* at 923.) I disagree and therefore dissent.

Assuming for the moment that the majority is correct, and that only four of the six proffered reasons have been successfully rebutted, I cannot agree that no one of the four is "so fishy and suspicious" as to call the remaining two reasons into doubt. Consider, for example, Buss America's contention that Wolf had been dilatory in obtaining a home telephone. According to its summary judgment motion, Buss America was troubled by the fact that Wolf had no home telephone during his first six months on the job because this made it difficult for the company to contact him. The motion and accompanying factual statement, however, did not advert to a single instance in which Buss America actually needed or attempted to reach Wolf at home during this period. *See Collier v. Budd Co.*, 66 F.3d 886, 893 (7th Cir.1995) (reversing summary judgment where company offered little or no evidence to support its proffered reasons). Wolf explained in response that he had purchased a home in Elk Grove Village, Illinois, in September 1989, upon becoming a Buss America employee, but that he had continued to travel on business approximately ninety percent of the time. Thus, he generally communicated with company officials from either his hotel or his job site. Wolf also indicated that he ordered telephone service for his Elk Grove Village home in February or March of the following year. In the ensuing months and through the date of his termination *almost two years*

*later,* Wolf never once received a telephone call from his employer at his home. Nor did he receive such a call at a hotel in the course of his travels. Thus, construing the record in the light most favorable to Wolf, as we must on summary judgment, the following picture emerges: Buss America terminated perhaps its best engineer in December 1991, in part because he had not had a home telephone almost two years earlier, upon first moving to this country, although he traveled approximately ninety percent of that time and the company never once called him at home or on the road in the ensuing months. In my view, Wolf not only discredited this reason, he exposed it as preposterous. A reasonable jury certainly could infer from the flimsiness of this reason that the company's two remaining reasons also lack credibility. *See Russell,* 51 F.3d at 70.

But the preposterousness of the telephone reason is not even the most persuasive factor favoring Wolf at this stage. *Russell* emphasized that summary judgment may also be improper where the rebutted and unrebutted reasons are "intertwined"—that is, where the reasons themselves are factually related or are considered by the employer only as component parts of its overall decision. 51 F.3d at 70. Here, Buss America concedes that it was the cumulative force of the reasons offered, and not any one standing alone, that caused it to dismiss Wolf and to retain a younger, less experienced engineer. (*See* Buss America Br. at 5–6 (describing the weighing process engaged in by Rauch).) In that sense, this case bears little resemblance to *Russell,* where the employer expressed a general dissatisfaction with the plaintiff's job performance (evidenced by numerous disciplinary warnings) and then offered more specific concerns as further support for its decision. *See* 51 F.3d at 68–69. The fact that

Russell succeeded in rebutting one of the specific concerns did not in that case affect the defendant's overall assessment of the adequacy of his performance. *Id.* Here, however, Buss America was not generally dissatisfied with Wolf's performance. As the majority points out, the company only decided to dismiss one of its three service engineers because of an economic slowdown. In determining which of the three to dismiss, Buss America weighed the relative strengths and weaknesses of each and concluded that the six "negatives" it attributed to Wolf outweighed both his positive qualities and the deficiencies of his younger counterpart. If Wolf had had only two "negatives," however, the company's weighing process may well have produced a different result (assuming, that is, that the age of the candidates was never placed on the scale). Thus, because of the way Buss America characterized its own decision-making process, none of the six reasons can stand alone or even in pairs; those reasons are "intertwined" in any sense of the word.[1]

Whether or not the proffered reasons are "intertwined," however, is simply a convenient means of approaching the ultimate question in cases such as this one—whether it would be permissible for the finder of fact to infer from the falsity of the rebutted reasons that the remaining reasons also are pretextual. Because we will not affirm summary judgment in an employment discrimination case unless the employer would be entitled to a directed verdict if the record at trial were identical to that compiled on summary judgment (*Russell,* 51 F.3d at 70; *Robinson v. PPG Indus., Inc.,* 23 F.3d 1159, 1162 (7th Cir.1994)), the majority necessarily holds that a jury, upon finding four of Buss America's proffered reasons to be factually baseless, could not rationally infer that the

---

1. The majority offers the following response:

 We recognize that Buss America has not contended that the two remaining reasons would be sufficient, standing alone, to justify Wolf's dismissal.... These two reasons only became sufficient after Buss America was hit by an economic slowdown that necessitated the firing of one of its service engineers. Thus, the "intertwining" at work here takes place not among the six reasons *per se,* but rather among these reasons and the economic slowdown.

 (*Ante* at 923.) The point the majority misses is that Buss America never in fact considered any two reasons sufficient, not even in connection with the downsizing required by the economic slowdown. In weighing the positives and negatives of each service engineer, the company purports to have chosen Wolf based on its assessment of six negative characteristics. Clearly, those six negatives are but component parts of Buss America's overall employment decision. They are thus "intertwined" under *Russell.*

remaining reasons also are not credible. It is clear, however, that such an inference can be drawn, and has been drawn in other cases. *See, e.g., Fuentes v. Perskie,* 32 F.3d 759, 764 n. 7 (3d Cir.1994) (inference is permissible); *Roebuck v. Drexel Univ.,* 852 F.2d 715, 734 n. 32 (3d Cir.1988) (same); *Logue v. International Rehabilitation Assoc., Inc.,* 683 F.Supp. 518, 518 (W.D.Pa.1988) (in considering multiple reasons for a single employment action that are offered through the same witnesses, court may "follow the ancient legal maxim *falsus in uno, falsus in omnibus* "), *aff'd mem.,* 866 F.2d 1410 (3d Cir.1988); *see also Odima v. Westin Tucson Hotel Co.,* 991 F.2d 595, 602–03 (9th Cir.1993) (Fernandez, J., concurring) ("As I see it, we do not mean to say that the falsity of one reason cannot affect the court's perception of the truth of another one.... If based on the evidence, including the comparison of qualifications, the falsity of one reason, and the weakness of the other, the district court is led to a determination that the other reason is also false, the district court need only say so."); *Sims v. Cleland,* 813 F.2d 790, 793 (6th Cir.1987) (rejecting argument that inference is mandated but suggesting, *sub silentio,* that inference is permissible). As Judge Becker explained for the Third Circuit in *Fuentes:*

> If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfinder's rejection of some of the proffered reasons may impede the employer's credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.

32 F.3d at 764 n. 7. That, moreover, is the clear implication of *Russell*'s caveat. *See* 51 F.3d at 70.

The majority fails to explain why such an inference would be irrational here. Because all six reasons for Wolf's discharge were offered through the same witness, a jury could rationally reject his testimony in toto

upon finding that more than half of it was fabricated. *See Fuentes,* 32 F.3d at 764 n. 7; *Roebuck,* 852 F.2d at 734 n. 32; *Logue,* 683 F.Supp. at 518. The majority's contrary conclusion suggests to me that the two remaining reasons must be rock solid—like the employer's well-documented dissatisfaction with the plaintiff's performance in *Russell,* for example. Let me consider in more detail, then, the nature of those two allegedly unrebutted reasons.

First is the fact that Wolf had on two occasions suggested to officials at the Swiss parent company that Buss America adopt certain methods successfully employed by the parent. Wolf indicates that he turned out to be right both times and that no one at Buss America exhibited any resentment. Indeed, he produced evidence that Buss America's concerns had been resolved to everyone's satisfaction almost eighteen months before his termination. (*See* R. 30, Ex. 5.) The majority emphasizes, however, that it was the *occurrence* of these communications, and not their content, that was most troubling to Buss America, and that the company had a right to terminate Wolf for this reason. (*Ante* at 920–21.) I have no objection to the majority's analysis of this point, for even a seemingly inane view could be honestly held by an employer, and I agree that it is not our province in an age discrimination case to review the wisdom of a company's actions. (*See ante* at 920.) Indeed, if this had been the *only* reason Buss America had offered, it is unlikely that I would be dissenting today. But it was *not* the only reason, and it certainly does not strike me as so compelling that a jury could not reject it as incredible after finding that the company also proffered at least four fraudulent reasons. *See Odima,* 991 F.2d at 603 (Fernandez, J., concurring).

Which brings me to the final unrebutted reason, a reason that I do not find unrebutted at all. The majority concludes that Wolf failed to adequately dispute Buss America's contention that he did not complete service reports in a timely fashion. (*Ante* at 921.)[2] Yet Wolf indicated in his response that he

---

**2.** The precise reason was articulated in Buss America's Local Rule 12(m) statement:

Rauch wanted [s]ervice engineers to make reports after each service call. Rauch had trou-

completed his reports on a daily basis and that no one ever complained about their timeliness. The majority emphasizes, however, that Wolf sometimes completed his reports in German and that Buss America apparently wanted the reports in English. My colleagues infer from this that the reports in fact were untimely, despite Wolf's insistence that they were not. (*See ante* at 921 & 922 n. 4.)

I have several concerns about the majority's analysis of this point. First, Buss America itself, in moving for summary judgment, never linked the timeliness of Wolf's reports to the fact that they were sometimes completed in German. The company admits as much in its brief, conceding that this fact was never asserted in its motion as a basis for the termination decision. (*See* Buss America Br. at 11 & n. 1.) That motion and accompanying factual statement addressed only the timeliness of Wolf's reports (*see supra*, at n. 2), a question on which there undoubtedly is a disputed issue of material fact. It is not our business on summary judgment to search the record for other non-discriminatory reasons that potentially could support a challenged employment decision when those reasons were not actually articulated by the employer itself. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989) ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not."); *see also Hartman v. Board of Trustees of Community College Dist. No. 508*, 4 F.3d 465, 469 (7th Cir.1993). That strikes me as something entirely different from granting summary judgment on some *legal ground* supported by the record but not raised in the motion. (*See ante* at 921.)

I also think it improper on summary judgment to infer that Wolf's reports were consistently late simply because they sometimes were completed in German. (*Cf. ante* at 921.) As I mentioned, Buss America in its motion never linked the timeliness of the service reports to the language in which they

were written. (*See* R. 22, at 5.) More importantly, Rauch also never made such an assertion in his deposition. He merely indicated that the company had asked Wolf to write his reports in English and never suggested that it considered a report untimely when completed in some other language. (R. 22, Ex. F, at 126.) Construing the record in Wolf's favor, then, we must conclude that the two were not linked. On the question of timeliness, the sole reason advanced by the company in its motion, Rauch maintained that it sometimes took Wolf a full year to complete his service reports. (*Id.*) The summary judgment motion insisted, moreover, that Wolf's reports remained unacceptably late even after Buss America provided him with a dictaphone, which allowed him to dictate the reports in English. (R. 22, at 5.) Those assertions are contradicted in Wolf's response. Whether Wolf in fact completed his reports on a daily or a yearly basis can only be resolved after a trial. My colleagues, however, have short-circuited that process by relying on a reason never asserted in Buss America's motion, and by drawing an inference from that reason which is adverse to the nonmovant. Only in this way can the majority conclude that four, rather than five, of the "intertwined" reasons were successfully rebutted.

The majority also fails to consider that Wolf was by far the company's most highly skilled engineer. Whereas Wolf had worked with the relevant equipment for approximately thirty years, the younger engineer retained by the company had been hired only one year earlier. The retained engineer also learned most of what he knew about Buss America's equipment from Wolf, who had trained him. Buss America itself apparently considered Wolf to be an exceptional engineer, as the company had attempted to lure him away from its Swiss parent for almost a decade. That a company chooses to terminate an engineer with superior skills while retaining a younger, less experienced engineer certainly is relevant to any consider-

---

ble getting Wolf to submit these reports on a timely basis. In an effort to improve the timeliness of the reports, [Buss America] got each of the service engineers dictaphones so that

they could dictate the reports. Even after doing this, Rauch found that Wolf's service reports were unacceptably late.
(R. 22, at 5 (citations omitted).)

ation of whether the employer's proffered reasons are credible and whether they in fact prompted the adverse employment action. *See, e.g., Collier,* 66 F.3d at 893; *Shager v. Upjohn Co.,* 913 F.2d 398, 401 (7th Cir.1990) (reversing summary judgment where age discrimination plaintiff showed his alleged deficiencies to be exaggerated and offset by his overall performance).

The majority acknowledges early on that summary judgment motions must be considered with "added rigor" in employment discrimination cases such as this one. *Ante* at 918; *see also Collier,* 66 F.3d at 892; *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994). Despite that, it is content to affirm summary judgment here on the slimmest of records. That record reveals that Buss America purports to have terminated perhaps its best service engineer for six reasons, four of which Wolf rebutted and two that he allegedly did not. One of the surviving reasons, however, was never actually advanced by the employer, and the other is less than compelling. Such a case, in my view, is simply not summary judgment material. In that regard, I think it important to note that this is *not* a case about whether the federal age discrimination law provides a form of tenure or job insurance for competent older workers in an increasingly "pitiless" market. (*See ante* at 924.) No one disputes that it does not. This is instead a case about the standard of proof to which we will hold discrimination plaintiffs like Henry Wolf when their employers, on summary judgment, assert that a myriad of non-discriminatory reasons contributed to a single adverse employment action. That strikes me as a very important question in the development of this circuit's discrimination law. Because today's decision provides a less than satisfactory answer, I most respectfully but vigorously dissent.