EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

MICHELIN NORTH AMERICA,
INC., Defendant.

No. 98 C 5077.

United States District Court,
N.D. Illinois,
Eastern Division.

April 30, 1999.

Jean Powers Kamp, John C. Hendrickson, United States Equal Employment Opportunity Commission, Chicago, IL, Noelle Christine Brennan, Equal Employment Opportunity Commission, Chicago, IL, for Equal Employment Opportunity Commission, The, plaintiff.

Paul A. Patten, Chicago School Reform, Board of Trustees, Chicago, IL, Theresa M Gallion, Jackson, Lewis, Schnitzler & Krupman, Chicago, IL, Michael Todd Graham, Jackson, Lewis, Schnitzler & Krupman, Chicago, IL, for Michelin North America, Inc., defendant.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

The Equal Employment Opportunity Commission ("EEOC" or "the Commission") filed this lawsuit on behalf of Karen Bodie, a former employee of Michelin North America ("Michelin"). The Commission alleges that Michelin fired Bodie in retaliation for engaging in protected conduct, and Michelin now seeks summary judgment. The EEOC has produced evidence establishing a genuine issue whether Michelin fired Bodie because she filed a sex discrimination charge with the EEOC. Therefore, we deny Michelin's motion for summary judgment (19–1).

### FACTS[1]

In 1989, Michelin hired Bodie as a territory sales manager for the Chicago region.

---

1. Because this case is before us on summary judgment, we relate the record facts most

Following the birth of her child in February 1994, Bodie's supervisor Bob Phaneuf began harassing her. Initially, she simply sought a transfer from the Chicago District to Peoria in the St. Louis District, but eventually, in August 1994, she filed an EEOC charge for sex discrimination.

Michelin, instead of investigating Bodie's claims against Phaneuf, began investigating Bodie. Specifically, in October 1994, Human Resource Manager Todd Gillespie ordered Bodie to undergo psychological testing; reviewed all of Bodie's past expense reports, company credit card bills, and cellular phone bills; and opened a file of his own handwritten notes on Bodie. Although his October investigation of her expense documents revealed no problems, he conducted another such review at the end of January 1995. Again, he discovered no improprieties. On the other hand, Gillespie neither asked Phaneuf about Bodie's charges, nor questioned co-workers who witnessed interactions between Bodie and Phaneuf. Moreover, although a sales position in Peoria became vacant during this time, it was not offered to Bodie; instead, she was offered a transfer to Fargo, North Dakota; Des Moines, Iowa; or Oklahoma City, Oklahoma.

On February 7, 1995, Michelin conducted a fairness hearing, during which Phaneuf surprised everyone by admitting the alleged discriminatory conduct. Phaneuf was fired five days later, and Gillespie began settlement negotiations with Bodie. On March 31, 1995, an agreement was signed, (EEOC Ex. 14, Settlement Agreement and Release); Bodie relinquished her claims against Michelin in exchange for a transfer to Peoria.

While working in Peoria, Bodie's supervisor was Jim Cavanaugh. Although Bodie started working in the St. Louis District toward the end of March, she did not meet Cavanaugh until April 17. At that meeting, Cavanaugh asked Bodie "what the deal was" with Phaneuf. Bodie says that she immediately changed the subject because the settlement agreement prohibited her from disclosing its circumstances. She suspected that Cavanaugh was trying to trick her into violating the agreement so that Michelin could fire her.

On June 26, 1995, Michelin did in fact fire Bodie and, now, points to three reasons supporting its decision. (EEOC Ex. 24, Gillespie Memorandum to Bodie's File.) The first reason was insubordination. In April, Cavanaugh apparently told the Peoria sales team that they were required to use a specific Michelin-sanctioned bag when making sales calls. Bodie purchased (and charged on her expense report) a second bag to use in conjunction with the Michelin-sanctioned bag. She did not understand Cavanaugh's statement about using the Michelin bag as precluding the use of an additional bag, although this is what Cavanaugh intended. Cavanaugh interpreted Bodie's purchase of the second bag as evidence of disrespect and called Gillespie, who advised him to document the incident and disallow the expense.

The second reason given for firing Bodie is that she falsified her May expense report. On May 30, Bodie checked into a Holiday Inn in Effingham, Illinois. She had lunch and dinner at the hotel. On her expense report, (EEOC Ex. 20, June 6, 1995 Expense Report), she claimed $8.75 for lunch and $23.90 for dinner. However, she submitted the top portion of a hotel receipt for $12.94 and the bottom portion of the same receipt with $23.90 written on it. Cavanaugh did not confront Bodie with the discrepancy. Instead, he called Gillespie. In turn, Gillespie's notes suggest that he instructed Cavanaugh to research Bodie's other expenses (for example, her cellular phone bills, credit card bills, and "calls made vs claimed") and then called Michelin's legal department. (EEOC Ex. 10 at

favorably to the EEOC, the non-movant. Additionally, where the parties submit contradic-

tory facts, we assume Bodie's version is true.

D00425, Gillespie Notes, undated.) Cavanaugh received the records necessary to complete his research project on June 22. Again, Cavanaugh did not confront Bodie with the problem until the day he and Gillespie fired her. Finally, Michelin claims it fired Bodie because she double billed $23.20 in phone calls and made excessive personal calls while on the road that she charged to Michelin.

Ten days prior to her discharge, Cavanaugh completed a performance evaluation of Bodie. (EEOC Ex. 18, Bodie's Development Progress Review of June 16, 1995.) In the evaluation Cavanaugh does not report any of the problems Michelin allegedly relied upon to fire her, even though he and Gillespie had identified the three issues by the time Cavanaugh wrote the review. He also did not confront her orally when the two met to review the evaluation.

Cavanaugh arranged a meeting with Bodie on June 26, 1995, without revealing its purpose or that others would attend. But Cavanaugh cleared the date with Gillespie and Randy Gaetz, Michelin's Vice President of Sales for North America, and, in fact, the three men discussed a "plan of attack" prior to the meeting. At the meeting, Cavanaugh and Gillespie confronted Bodie with the three problems they had identified during their previous conversations. Bodie first explained that she had lost the dinner receipt for May 30 and, therefore used the lower part of her lunch receipt to document the cost of her dinner. Second, she explained her misunderstanding of Cavanaugh's instructions regarding the second bag, and noted that one of her co-workers, Mark Bierman, used a second bag identical to that purchased by Bodie, for which Michelin reimbursed him. Finally, she admitted mistakenly charging $23.20 in phone calls to two separate departments. The three men were unsatisfied with her explanations and fired her on the spot.

The EEOC claims that these facts establish Michelin's retaliatory motivation for firing Bodie. Specifically, the Commission asserts that Gillespie was gunning for Bodie from the moment she filed her discrimination charge with the EEOC, and that he orchestrated the events that resulted in her discharge. Michelin, on the other hand, argues that Cavanaugh fired Bodie and that he could not possibly have had a retaliatory motive because he was unaware of Bodie's protected activities. Moreover, according to Michelin, Cavanaugh was simply following Michelin's zero-tolerance policy when confronted with an employee's falsified expense report.

## ANALYSIS

### I. Procedural Issues

Initially, we must address two procedural issues. Michelin maintains that by signing the settlement agreement Bodie waived any claim she had against Michelin arising before March 31, 1995. Similarly, Michelin claims that the allegations in the EEOC's complaint limit our consideration of events to those occurring after March 31, 1995. (Reply Br. at 2–3 (quoting Compl. at ¶ 7 ("Since at least March, 1995, Michelin has engaged in ... unlawful employment practices.")).) Michelin waived these arguments by failing to raise them in its opening brief, and by itself relying on facts occurring prior to March 31, 1995.

In any event, Michelin's assertions regarding limits on our consideration of the evidence are without merit. The EEOC does not claim that Michelin retaliated against Bodie before March 31. Rather, the Commission relies on evidence of events occurring before March 31 to support a conclusion that, as alleged in the complaint, Michelin retaliated against Bodie in June 1995, when it fired her. Nothing in either of the documents relied upon by Michelin precludes the introduction of such evidence in support of the allegation.

Furthermore we suspect that the EEOC, if given the opportunity, would point to Michelin's alleged breach of the settlement agreement, (EEOC Ex. 14, Set-

tlement Agreement at ¶ 4 (promising that Michelin will not retaliate against Bodie for her EEOC charge)), to invalidate that document, thereby avoiding any potential evidentiary limits contained in that document. Finally, we expect the Commission would argue that Federal Rule of Civil Procedure 8(a) obliterates fact-pleading in most circumstances, including this one. Thus, the Commission's failure to plead facts prior to March 31 does not preclude our consideration of those facts.

We hold that Michelin has waived any argument regarding the EEOC's reliance on events prior to March 31, 1995, by failing to present those arguments until its reply brief. Alternatively, we conclude that Michelin's procedural arguments are without merit. For these reasons, we reject Michelin's attempt to limit our consideration of the evidence before us.

## II. Merits

At issue in this summary judgment proceeding is whether the EEOC has produced any evidence from which a jury could reasonably conclude that a causal link exists between Bodie's EEOC charge against Michelin and her discharge. *See Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1038–39 (7th Cir.1998) (Prima facie case for retaliation requires the plaintiff to establish "a causal link between the protected activity and the adverse action.").[2] Michelin argues that the EEOC cannot possibly establish such a causal link because Cavanaugh, who did not know about Bodie's EEOC charge, was the sole decision maker.

Evidence in the record, however, supports the Commission's argument that Gillespie coordinated Bodie's discharge in retaliation for her discrimination charge against the company. In addition to the simple fact that Gillespie was Cavanaugh's superior, Cavanaugh continually consulted Gillespie about Bodie during the relevant time period. (*See* EEOC Ex. 10, Gillespie Notes.) Gillespie's notes also show that he consulted Michelin's legal department about the situation. A jury could reasonably conclude, based on these facts, that Gillespie orchestrated Bodie's discharge.

Furthermore, a reasonable jury could conclude that Gillespie's recommendations to Cavanaugh, his subordinate, were informed by a retaliatory intent. His notes alone would allow, although not necessitate, such a conclusion. One way of interpreting the notes is that Gillespie was documenting a problem-employee who had a litigious track record. However, a jury could also reasonably conclude that Gillespie was accumulating tidbits for the purpose of getting rid of Bodie at the earliest possible moment. In other words, the evidence supports an inference that Gillespie was just waiting for an excuse to fire Bodie when the real reason he wanted to fire her was her actions against Michelin.

Additionally, Gillespie's behavior immediately following Bodie's EEOC charge—gathering all of her expense records for evaluation—and in January 1995—again searching her expense records—supports an inference that, once he found out about the EEOC charge, he decided to get her. Finally, Cavanaugh's failure to confront Bodie's purported employment problems when the two reviewed her performance evaluation could reasonably support a conclusion that he wasn't terribly concerned about her alleged transgressions. We conclude that the Commission has produced evidence establishing a factual question of causation for the jury.

Michelin also attacks the EEOC's showing that Michelin's legitimate reasons for firing Bodie were really a pretext for unlawful retaliation. *See Parkins,* 163 F.3d at 1038–39 (If the defendant sets forth a legitimate nondiscriminatory reason for the adverse employment action, the plain-

2. Michelin does not challenge the EEOC's ability to establish the first and second elements of a prima facie case of retaliation: that Bodie engaged in protected activity and that she suffered an adverse employment action. *Id.* at 1038.

tiff must show that the reason is pretextual.). Michelin argues that any one of the reasons it gave for firing Bodie were sufficient to justify the employment action. Additionally, it claims that Michelin has zero tolerance for deceptive behavior by employees.

■ A pretext is a lie; in this context it is "a phony reason for some action." *Wolf v. Buss America, Inc.*, 77 F.3d 914, 919 (7th Cir.1996). Thus, the Commission must produce evidence from which a jury could conclude that Micheline's stated reason for firing Bodie is not true. The Commission satisfies this burden with evidence that other employees who behaved similarly to Bodie, or worse, were not disciplined or fired. For example, Mark Bierman, Bodie's co-worker, testified that in Spring 1995 he purchased a second bag to use with his Michelin-sanctioned bag and that he was reimbursed for that purchase. (Michelin Ex. H, Bierman Aff. at ¶ 6.) Regarding incorrect expense reports, examples of employees who either did not submit receipts supporting meal expenses, claimed meals they were not entitled to claim, or submitted highly suspicious claims (e.g., a month's worth of lunches each costing precisely $8.00), but were neither disciplined nor fired abound. Additionally, the evidence shows that some of the employees who were fired for falsifying records (predominantly time cards) received oral and written warnings prior to the transgressions for which they were fired. Similarly, the Commission cites evidence of employees who charged personal phone calls in amounts far larger than those charged by Bodie, but who were never disciplined in any way.

Michelin attempts to distinguish the circumstances of these other employees from those involving Bodie. In general, it claims that the supervisors of the other employees believed that the employees were simply mistaken, and thus had not "falsified" records. Thus, according to Michelin, that those employees were treated differently than was Bodie does not establish pretext. But, there are sufficient similarities between the other employees and Bodie that a reasonable jury could conclude that Gillespie "cooked up" Michelin's reasons for firing Bodie; that had she not filed the EEOC charge she would not have been fired. This evidence regarding other employees, especially when considered in conjunction with the circumstances surrounding Bodie's discharge, supports an inference that Michelin lied about its reason for firing Bodie.

This Court is mindful of the Seventh Circuit's admonition against acting as a super-personnel department. *Dale v. Chicago Trib. Co.*, 797 F.2d 458, 464 (7th Cir.1986). Courts will not fault an employer for consistently enforcing a zero-tolerance policy for falsifying company records in a nondiscriminatory fashion. Yet, in this case, the Court's evaluations of the entire mosaic of circumstantial evidence under the applicable standards shows that the EEOC has produced sufficient evidence to cast doubt on the uniform enforcement of Michelin's alleged policy. The EEOC has thereby established a genuine issue of whether Michelin's reliance on the policy is pretextual and a false excuse for its retaliating against Bodie. Resolving this factual question at this point in the proceedings would mean invading the province of a jury.

## CONCLUSION

The EEOC has produced evidence establishing a genuine issue whether Michelin fired Bodie in retaliation for her protected speech. Therefore, we deny Michelin's motion for summary judgment (19–1). The parties should immediately exhaust all remaining settlement possibilities for this case. If the case cannot be settled, a Final Pretrial Order should be filed on or before June 1, 1999. A status hearing will be held on May 27, 1999, at 9:30 a.m., and the trial will begin on June 14, 1999, at 10:00 a.m.