David **BARON**, Plaintiff–Appellant,

v.

**CITY OF HIGHLAND PARK,**
Defendant–Appellee.

No. 99–1148.

United States Court of Appeals,
Seventh Circuit.

Argued May 12, 1999.

Decided Oct. 27, 1999.

Richard J. Gonzalez (argued), Chicago–Kent College of Law, Chicago, IL, for Plaintiff–Appellant.

John J. Zimmerman (argued), Bradtke & Zimmermann, Mount Prospect, IL, for Defendant–Appellee.

Before COFFEY, RIPPLE and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

On March 6, 1997, the plaintiff-appellant, David Baron ("Baron"), brought a claim against the City of Highland Park, Illinois, under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, alleging that he was denied promotion to fire lieutenant because of age. The defendant-appellee, the City of Highland Park, filed a motion for summary judgment on April 30, 1998, which the United States District Court for the Northern District of Illinois granted on December 16, 1998. On January 14, 1999, the plaintiff filed his notice of appeal. We affirm.

## I. BACKGROUND

The plaintiff Baron has been employed as a full-time firefighter by the fire department of the City of Highland Park, Illinois, since November of 1974. The forty-seven-year-old plaintiff applied for a promotion to fire lieutenant in September of 1996.[1] Candidates applying for the position of fire lieutenant must take a written examination and undergo an oral interview in order to be considered for promotion. The City of Highland Park's Civil Service Commission ("Commission") administers the test and interview. The written examination is administered first, from which the Commission scores the examination and ranks the applicants accordingly. Two Commission members then proceed with an oral interview of each applicant and rate them based upon such factors as knowledge and experience, education and training, as well as general appearance, understanding and self-expression, poise and emotional stability, and overall suitability. The oral interview score is then averaged with the written test score, and additional points are added based on military experience and seniority. This averaged score becomes the applicant's final result, and applicants are given a final ranking based on their combined test results. Candidates must rank at or near the top of this "final eligibility list" to be promoted to the fire lieutenant's position.

In September of 1996, Baron received a score of 81 on his written examination, which placed him fifteenth out of eighteen applicants on the preliminary list. Baron thereafter completed an oral interview with Commission-members Dan Brusslan ("Brusslan") and Peter Barron ("Barron") (no relation to the plaintiff). Baron received a score of 72 on his oral interview, and received two additional points for military service and two points for seniority, for an overall final score of 80.5. Baron's result placed him twelfth on the final eligibility list. Because there were only two fire lieutenant positions available, only the top two ranked individuals from the final eligibility list were promoted: Patrick Tanner ("Tanner"), age 30, who received the same written score as Baron (81), but a much higher oral score; and Kenneth Olzewski ("Olzewski"), age 31, who received much higher oral and written scores (86 and 89, respectively) than did Baron.

---

1. A fire lieutenant is responsible for supervising firefighters in using equipment, handling emergencies, and overseeing fire team operations.

Baron, who was not promoted and was unhappy with his oral interview score, believed that he was well-qualified to be fire lieutenant because he possessed a "good common sense approach to fire fighting" and twenty-three years of firefighting experience. Furthermore, he was of the opinion that he was more qualified for the position than either Olzewski or Tanner because, among other factors, he possessed several college and university degrees and had received instruction in a variety of methods of firefighting. The forty-seven-year-old plaintiff was convinced that he had not been promoted to fire lieutenant due to age discrimination and filed suit against the City of Highland Park on March 6, 1997, alleging wrongful discrimination in willful violation of ADEA because "there are several younger fire fighters that went to the top of the list and the bulk of the older fire fighters went to the bottom of the list."

As evidence of his contention, Baron stated in his deposition that his oral interview lasted only five minutes, well short of the twelve-minute average. In an affidavit submitted to the court, Baron also stated that he was not asked any substantive questions regarding firefighting and was not given any hypothetical questions or problems regarding firefighting situations to respond to, contrary to city policy, and that in essence, the Commission was merely "going through the motions" and his oral examination was a sham. Furthermore, Baron alleged that another firefighter, Steve Drake ("Drake"), had overheard city fire chief David Campagni mention at a social event prior to the promotion process that "[Baron] only wanted the position to enhance [his] pension," and that "[Baron] was too close to pension." Baron also argued that direct evidence of discrimination against older candidates was reflected in a statement made by Brusslan that Baron's education and training were not recent. The district court, in its findings, stated that Baron took Brusslan's comments out of context; Brusslan was merely stating that he felt that recent education

and training reflected a continuing interest in firefighting.

The district court rejected the plaintiff's argument that comments made by Campagni and Brusslan constituted direct evidence of discrimination. The court found that Baron's testimony regarding Campagni's alleged statement was inadmissible hearsay and could not be considered in deciding whether to grant summary judgment. Furthermore, the district court found that there was no indirect evidence of discrimination under the *McDonnell Douglas* burden-shifting analysis. Although the court ruled that Baron had established a prima facie case of discrimination, the trial judge concluded that Baron had failed to demonstrate that the defendant's legitimate, nondiscriminatory reasons for not giving him the promotion (that Baron did not perform sufficiently well on the written test and oral interview) were pretextual.

## II. ISSUE

On appeal, the plaintiff contends that the district court erred in granting summary judgment to the defendant because there were genuine issues of material fact from which a reasonable jury might have found age discrimination under the ADEA.

## III. DISCUSSION

■ This Court reviews the grant of summary judgment *de novo*. *See Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 395 (7th Cir.1999). In general, summary judgment is appropriate where the pleadings, answers, interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact" and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Only genuine disputes over "material facts" can prevent a grant of summary judgment, and "material facts" are defined as those that might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* When considering a motion for summary judgment, a court must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party. *See Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

The plaintiff contends that the trial court erroneously granted the defendant's summary judgment motion. Baron maintains that the subjective nature of the oral interview facilitated the examiners' discriminatory agenda. Specifically, Baron claims that although Tanner and Olzewski received scores of 81 and 86, respectively, on the written test, which placed them fourteenth and eighth in the preliminary ranking, they received the two highest positions on the final eligibility list and thus their oral interview scores were unfair. Baron goes on to argue that these two respective interview scores were unfair in that they were motivated by age discrimination, as evidenced by remarks made by Commissioner Brusslan and Fire Chief Campagni. As further evidence of discrimination, Baron notes that his oral interview lasted only about five minutes, far short of the twelve-minute norm. Furthermore, in his affidavit, Baron stated that he was asked no substantive questions regarding firefighting during the interview and was not given any hypotheticals regarding firefighting situations.

The city responds that Baron's allegations concerning the statements of Campagni and Brusslan were inadmissible at trial and taken out of context. The city further responds that the time allotted to Baron's interview was of the same duration as that of the other participants, about twelve minutes, and that Baron was asked the same questions. This fact is highlighted by the fact that Baron's affidavit, in which he stated that he was only asked three questions, differs from his deposition testimony, in which he contended that he could only *remember* three questions. Furthermore, Brusslan stated that he asked all applicants questions to determine how they would react in given emergency situations. Brusslan stated that he did not think that Baron would command the requisite respect from his men and concluded that Baron "sat there and gave a very poor oral interview.... He was like a bump on a log is the only way I can put it." The city also noted that the second examiner, Barron, said that Baron's demeanor at the interview was extremely unimpressive and that he lacked leadership skills.

■ In considering the trial court's grant of summary judgment, initially we note that the ADEA makes it illegal for an employer to "discharge any individual ... because of [the] individual's age." 29 U.S.C. § 623(a)(1). It is the purpose of the ADEA "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). A plaintiff seeking relief under the ADEA must establish that he would not have been treated adversely by his employer "but for" the employer's motive to discriminate against him because of his age. *See O'Connor v. DePaul Univ.,* 123 F.3d 665, 669 (7th Cir.1997).

■ An ADEA plaintiff may prove age discrimination with either direct or circumstantial evidence. *See Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 393 (7th Cir.1998). If an ADEA plaintiff is unable to proffer direct evidence to prove the discrimination claim, he may attempt to establish his case with circumstantial evidence and rely on the familiar *McDonnell Douglas* burden-shifting model. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

This Circuit succinctly described the *McDonnell Douglas* approach in *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297 (7th Cir.1996) and reiterated the approach in *Adreani* as follows:

> The familiar framework established in *McDonnell Douglas* necessitates a three-step inquiry. First, a plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a "legitimate, nondiscriminatory reason" for discharging the plaintiff. Finally, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

*Wilson v. AM Gen. Corp.*, 167 F.3d 1114, 1119–20 (7th Cir.1999) (citations omitted). Establishment of the prima facie case creates a "legally mandatory, rebuttable presumption" that the employer unlawfully discriminated against the employee. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311–12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quotation omitted). Once this presumption has been created, the burden then shifts to the defendant to articulate a nondiscriminatory reason for the employment decision. *See id.* at 311, 116 S.Ct. 1307. If the defendant is able to satisfy this burden, the *McDonnell Douglas* presumption drops from the case and is no longer relevant. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The plaintiff must then prove, by a preponderance of the evidence, that the defendant's reasons were pretext. *See id.* at 804–05, 93 S.Ct. 1817.

In the case under consideration, the plaintiff Baron initially contends that direct evidence in the record establishes that the city discriminated against him and that, "but for" the city's motive to discriminate, he would have been promoted to lieutenant in September of 1996. *See O'Connor*, 123 F.3d at 669. In order to establish that the city discriminated, the direct evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir.1989); *see also McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir.1991). "Remarks at work that are based on [age] stereotypes do not inevitably prove that [age] played a part in a particular employment decision." *Randle*, 876 F.2d at 570.

Baron alleges that Campagni told a co-employee that Baron was "too close to pension" to be promoted to fire lieutenant. However, the Rules of Evidence provide that a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted is inadmissible hearsay. Fed.R.Evid. 801(c). The out-of-court statement at issue here was made by Drake, Baron's co-employee, and is offered by Baron "to prove the truth of the matter asserted," that is, that Campagni did in fact say what Drake later reported to Baron. As such, Drake's statement is inadmissible and does not constitute direct evidence of discrimination. Baron also argues that Brusslan's statement, that Baron's education and training were not "recent" enough, is direct evidence of discrimination. However, as the trial judge correctly found, Baron took Brusslan's statement out of context. Brusslan did not testify that Baron's training and education were outdated because they took place at an earlier time; he instead explained that in his opinion, Baron's lack of recent education or training signaled that Baron did not have a "continuing interest" in firefighting. Furthermore, there is no direct evidence in the record which reveals a motivation on the part of Commission-members Barron or Brusslan to discriminate on the basis of age, and the plaintiff himself stated that

age was not mentioned during the course of his interview. Because there is no direct evidence in the record to satisfy Baron's discrimination claim under the ADEA, we now proceed to examine whether the record contains any indirect evidence of discrimination, utilizing the *McDonnell Douglas* burden-shifting standard.

■ In order to establish a prima facie case of discriminatory denial of promotion under the ADEA, Baron must establish that: (1) he is a member of the protected class of persons over forty years of age; (2) he was qualified to be a fire lieutenant; (3) he was not promoted; and (4) similarly situated younger employees were treated more favorably. *See Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 919 (7th Cir.1996). The trial court ruled that Baron had established a prima facie case, and neither party disputes that Baron has satisfied the first and third components of *Wolf*. The dispute before us concerns only whether Baron has satisfied the second and fourth criteria: whether he was qualified to be a fire lieutenant and whether similarly situated younger employees were promoted instead of Baron.

■ The city specifically contends that Baron was not qualified for the lieutenant position for several reasons: he did poorly on the oral examination and he lacked the necessary leadership characteristics and drive to fulfill the responsibilities of a fire lieutenant. While the city might have valid reasons to back the decision not to promote Baron, the question before this Court at this stage of the analysis is not whether Baron should have been promoted, but whether he has presented sufficient evidence that he was qualified for the position. In other words, even if Baron was *not the most qualified candidate*, was he nevertheless a qualified candidate? Baron had training and experience at least equal to those of the two applicants who were promoted, and though Baron's oral examination score did not place him at the top of the class, his written examination score was exactly the same as one of the applicants who was promoted. Based on his training, education, and score on the written examination, it is this Court's opinion that Baron was qualified to be promoted. Thus, this Court holds that Baron has satisfied the second component of the *Wolf* prima facie test.

■ Concerning the fourth element of *Wolf*, we consider whether Baron established that the city granted the promotion he sought to a younger applicant who had similar or lesser qualifications. The two firefighters who were promoted, Tanner and Olzewski, were younger than Baron by at least sixteen years. The city contends that Tanner and Olzewski were more qualified than Baron because of their higher scores on the oral examination (Baron received a score of 72, while Tanner received a score of 95 and Olzewski received a score of 89). However, as we established in the previous discussion, Baron had training and education skills similar to those of Tanner and Olzewski and received the same score on the written examination as Tanner did. Thus, we cannot conclude that Baron failed to present sufficient evidence to establish that he had similar qualifications to Tanner. This does not mean that Baron should have been promoted instead of Tanner; only that Tanner's promotion was not a foregone conclusion when his qualifications were compared with those of Baron. Thus, under the *McDonnell Douglas* burden-shifting test, Baron has established a prima facie case of age discrimination. Because Baron demonstrated the prima facie case, the burden shifts to the city to present a legitimate, non-discriminatory reason for its failure to promote Baron. *See McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817.

■ The city has presented several compelling, legitimate, and non-discriminatory reasons for its failure to promote Baron. The city claims that Baron was deficient in his communication skills, leadership qualities, and poise. It also claims

that Baron appeared uninterested in the fire lieutenant position during his oral interview. The city also notes that Baron did poorly on the written test, placing fifteenth out of a total of eighteen applicants. All of these reasons are legitimate, non-discriminatory explanations for the city's failure to promote Baron. Though Baron might contend that the city discriminated against him, he must consider the possibility that the city was unwilling to grant the promotion because it did not want to promote a weak applicant, particularly in the instance where the applicant would face fire emergencies lacking the necessary leadership and knowledge skills (i.e., the judgment to know when to enter a burning building or when to move an injured person at a fire scene or when to call for a second or third alarm) to lead the firefighters under his supervision and control in a dangerous situation. In fact, Baron's interviewers stated that he would not command the requisite respect from his men and that he "sat there and gave a very poor oral interview.... He was like a bump on a log is the only way I can put it." Furthermore, as we have noted on numerous occasions, this Court does "not sit as a superpersonnel department that reexamines an entity's business decisions." *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 300 (7th Cir.1998) (quotation omitted). In so holding, we merely affirm the notion that Highland Park should never be forced to promote a worker who does not meet the city's needs.

 Having determined that the city presented legitimate, non-discriminatory reasons for not promoting Baron, we finally consider, under *McDonnell Douglas*, whether the reasons the city proffered are pretext. To defeat the city's neutral reasons for refusing to promote him, Baron must establish that: (1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the failure to promote; or (3) the proffered reasons were insufficient to motivate the failure to promote. *See Wolf,*

77 F.3d at 919. This Court has previously defined "pretext" as a lie or a phony reason for an employment decision. *See Richter v. Hook–SupeRx, Inc.*, 142 F.3d 1024, 1029–30 (7th Cir.1998). In considering whether Highland Park's reasons are pretextual, we bear in mind that the overall correctness or desirability of the reasons proffered is not relevant to the determination of pretext. *See id.* at 1029.

 Despite the plaintiff's contentions to the contrary, there is no evidence in the record to demonstrate that any of these reasons (Baron's poor performance on the written examination, his poor performance on the oral interview, his lack of leadership skills, his poor demeanor during the oral interview, his lack of recent training and general lack of interest in firefighting, and his inability to express himself clearly and concisely) are fallacious. Furthermore, there is nothing in the record to suggest that the oral examination was a sham, and the plaintiff failed to adduce any evidence to demonstrate that the selection process was skewed. This Court examined factual circumstances similar to those under consideration in *Diettrich v. Northwest Airlines, Inc.*, 168 F.3d 961 (7th Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 48, —— L.Ed.2d —— (1999). In *Diettrich*, the plaintiff alleged that the employer's interviewer was not trained to give interviews, abandoned the standard interview format, and made the interview more varied and difficult. *See id.* at 965. In evaluating the plaintiff's claims, this Court held that "a subjective, even arbitrary, selection process is not proof of discrimination." *Id.* at 966. Furthermore, we have held that "[e]mployers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter." *Kuhn v. Ball State Univ.*, 78 F.3d 330, 332 (7th Cir.1996). Because Baron has failed to establish that the city's reasons for refusing to grant the promotion were anything but part of an arbi-

trary selection process, we hold that the district court was correct in granting summary judgment.

## IV. CONCLUSION

We hold that Baron failed to present direct evidence of discrimination and indirect evidence to demonstrate that the defendant's reasons for refusing to grant the promotion were pretext under the *McDonnell Douglas* burden-shifting method.

AFFIRMED.