**Allen ANDREE, Plaintiff–Appellant,**

v.

**SIEMENS ENERGY AND AUTOMATION, INC., Defendant–Appellee.**

No. 02–2829.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 2003.

Decided Dec. 17, 2003.

Alan C. Olson, Olson & Associates, New Berlin, WI, for Plaintiff–Appellant.

David E. Jarvis, Quarles & Brady, Milwaukee, WI, Dana L. Rust, McGuire, Woods, Battle & Boothe, Richmond, VA, for Defendant–Appellee.

Before BAUER, CUDAHY, and COFFEY, Circuit Judges.

## ORDER

Plaintiff-appellant Allen Andree brought three claims against his former employer, Siemens Energy and Automation, Inc.: Wisconsin common law claims for unjust enrichment and breach of contract, which were dismissed on summary judgment; and a claim that his discharge was in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"). The court entered judgment as a matter of law in favor of Siemens on this latter claim (age discrimination) at the close of his case before a jury. The plaintiff appeals the trial court's judgment on each of his three claims. We affirm.

### I. Jurisdiction

The basis for federal jurisdiction in the district court over Andree's age discrimination claim, which has not been challenged, was 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b), as well as 28 U.S.C. § 1331. The court had supplemental jurisdiction over Andree's Wisconsin common law claims for breach of contract and unjust enrichment under 28 U.S.C. § 1367.

This Court has jurisdiction over Andree's suit on appeal under 28 U.S.C. § 1291.

## II.  Issues

On appeal the plaintiff raises three issues: (1) whether the district court erred in finding that Andree could not, as matter of law, establish that Siemens' proffered reason for terminating him was a pretext for age discrimination; (2) whether the judge properly granted summary judgment in favor of Siemens on Andree's breach of contract claim; and (3) whether the court properly granted Siemens' motion for summary judgment on the plaintiff's claim for unjust enrichment. We consider each of these issues, and the pertinent facts, in turn.

## III.  Andree's Age Discrimination Claim

### A.  Factual Background

Siemens, a manufacturer of software and hardware automation products for industrial customers, is incorporated under the laws of Delaware, with its principal place of business in Alpharetta, Georgia. The Milwaukee division of the company hired Andree as an Account Manager in August 1996, when he was 52 years of age, to market and sell the defendant's automation products to clients in Wisconsin. The plaintiff's job duties required him to service existing customers and to make "cold calls" on potential customers to generate new sales. After hiring Andree, Siemens spent several weeks training him to use a laptop computer in order that he might give demonstrations of Siemens' software products. In 1997, Greg Jaster, Andree's supervisor, rated the plaintiff as an exemplary employee resulting in his receiving a merit-based pay increase in mid-June 1998.

Sometime around July 1, 1998, Siemens transferred Jack Vanek to Wisconsin where he was assigned the duties of Area Manager and became Andree's immediate supervisor. Six weeks later, on August 19, 1998, Vanek issued a disciplinary memorandum to Andree informing him that he was performing "significantly below job requirements." The memorandum went on to identify the plaintiff's inadequacies, namely, that his job performance demonstrated a lack of "technical ability" as well as "interpersonal communication skills," and, furthermore, a number of customers were contacting a Siemens distributor and other Siemens employees directly for presentations in order to avoid Andree. (Ex. 1000.)

Vanek's August 19 memorandum also advised Andree that he was being transferred into a program classified as a "work plan," which would last four weeks in duration and would require the enrollee improve his technical skills by completing four software demonstrations that Siemens' two other sales representatives in the Milwaukee region could perform. The thread of employment was wearing thin and the plaintiff was warned that if he failed to improve his technical skills, it could result in his termination. In September of 1998, it was determined that Andree had failed the work plan (technical skill review) program.

Rather than terminating Andree at this time, Siemens continued his employment status as an Account Manager and continued him in the software training during the months of February and March 1999. Despite this additional training, the plaintiff fared no better during a second technical skill review on June 14, 1999. As a result of his failure to satisfy the technical requirements of his second review, Vanek sent Andree another disciplinary memorandum stating that his technical ability had failed to improve since his first review and that he had but two additional weeks to fulfill the work plan's requirements.

Andree continued to have difficulty with software demonstrations and, as a result, failed a third technical skill review on June 29, 1999. Vanek issued a third disciplinary memorandum to the plaintiff on July 1 informing him that, because he was still having difficulty understanding and demonstrating Siemens' automation products, he would henceforth be assigned to make only "cold calls"[1] (as opposed to servicing existing accounts). The memorandum also warned the plaintiff-appellant that the threat of termination was still in the wind if he did not carry through with his assignment in an acceptable manner.

Andree's new assignment required that he develop his own potential customer list as well as submit weekly "call plans" together with follow-up "call reports." Call plans listed the sales calls that the plaintiff expected to make while call reports documented the calls he made and the results thereof. For a total of five weeks in July and August of 1999, Andree made cold calls and submitted weekly call reports.

On August 9, 1999, Joseph Schneider, another new supervisory employee,[2] prepared a memorandum and submitted the same to Vanek and Gary Stachelski, the regional Vice–President (Vanek's supervisor), detailing a number (7) of inconsistencies in the calls listed on Andree's call reports and what Schneider learned after investigating and contacting a number of the people and businesses listed on the call reports in an attempt to ascertain the accuracy of the information reported. Later that day, three of the company's top echelon, Schneider, Vanek, and Stachelski, met with Andree and confronted him about the factual inconsistencies contained in the reports submitted. For example, the plaintiff wrote on one call report that he called on a customer, West Bend Equipment, and he allegedly met with Richard Klumb, the company's Engineering Manager. However, Schneider had learned that Klumb had retired some two years earlier, and Andree acknowledged that he had simply left the Siemens' company literature outside the door of West Bend's office. In another report, Andree reported having made a call to a representative from Oven Systems when, in fact, the representative was unavailable on that date. Despite admitting to his supervisors that he had not actually called upon a number of the people listed in his reports, Andree somehow came up with his own way of rationalizing to deny falsifying his reports.[3]

Siemens at this time decided to discharge Andree "for falsifying call reports while ... on a performance improvement plan" on August 30, 1999, when he was 55 years of age.[4] During the termination

1. The July 1, 1999, memorandum describes "cold calls" as "new customer calls ... to establish a base of new customers to grow the business." The memorandum required Andree to make "a minimum of four new account calls" per day. Prior to his third technical skill review, the record does not reveal that Andree had a quota for the number of cold calls he was to make.

2. Siemens hired Joseph Schneider as the Manager of Application Engineers for its Milwaukee division around July 1, 1998.

3. Andree attempted to explain away the falsity of his call reports by alleging that he believed the reports he filed were, in effect, "living documents." According to the plaintiff, the call reports were "living documents" because the forms would ultimately be used to make follow-up calls. Andree asserted that he listed people on his reports whom he believed to be representatives for potential clients in order that they might be contacted at a later date, even though he had not personally met with them on the dates reported.

4. During his deposition, Vanek stated that the decision to discharge Andree was a "group decision" made by Vanek, Stachelski, Mike Nobles (the Human Resources Manager), and Schneider. (Vanek Dep. at 89.)

meeting, Siemens voluntarily offered to pay the plaintiff commissions not provided for in his contract of employment, totaling $44,265, in exchange for his agreeing to release the company from any and all legal claims. Andree refused the offer and it is interesting to note that during the termination conference he did not accuse the defendant of age discrimination. In the ensuing months after Siemens had replaced the plaintiff with an employee sixteen years younger, Andree wrote several letters demanding payment of the commissions, but Siemens refused.

Almost a year after his discharge, Andree filed this suit against Siemens alleging that he was terminated on account of his age, in violation of the ADEA, 29 U.S.C. §§ 621, *et seq.* On July 8–10, 2002, the plaintiff's age discrimination claim went to trail before a jury. At the close of Andree's case, Siemens made a motion under Rule 50(a) of the Federal Rules of Civil Procedure for judgment as a matter of law on the plaintiff's ADEA claim arguing, *inter alia,* that he could not establish that the defendant's proffered reason for terminating him was a pretext for age discrimination. The court agreed and granted Siemens' motion and discharged the jury after finding that the defendant's motivation to terminate Andree's employment was based on the plaintiff's filing of false call reports. The plaintiff appeals the trial court's grant of Siemens' Rule 50(a) motion.

*B. Standard of Review*

"We review *de novo* the grant of a Rule 50(a) judgment as a matter of law." *Murray v. Chicago Transit Auth.,* 252 F.3d 880, 886 (7th Cir.2001). As in the case before us, judgment as a matter of law

may be entered where " 'there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue.' " *Kossman v. Northeast Illinois Reg'l Commuter R.R. Corp.,* 211 F.3d 1031, 1036 (7th Cir.2000) (quoting Fed. R.Civ.P. 50(a)(1)).

*C. The ADEA Framework*

"To prevail on an ADEA claim, the plaintiff must ultimately prove that [he] was discharged because of [his] age." *Anderson v. Stauffer Chem. Co.,* 965 F.2d 397, 400 (7th Cir.1992). The ultimate question in the case *sub judice* is whether Andree would have been terminated for falsifying his call reports had he been younger than 40 years of age[5] and the circumstances surrounding his discharge were identical. *See Wilson v. AM Gen. Corp.,* 167 F.3d 1114, 1120 (7th Cir.1999). "The plaintiff need not prove that the employer was motivated by age *alone,* however; it is enough that age was a 'determining factor' or a 'but for' element in the employer's decision." *Id.; accord Mills v. First Federal Sav. & Loan Ass'n of Belvidere,* 83 F.3d 833, 840 (7th Cir.1996). "An ADEA plaintiff may prove age discrimination with either direct or circumstantial evidence" or a combination thereof. *Baron v. City of Highland Park,* 195 F.3d 333, 338 (7th Cir.1999); *accord Robin v. Espo Eng'g Corp.,* 200 F.3d 1081, 1088 (7th Cir. 2000). Andree admitted at trial that he had no direct evidence of age discrimination on the part of Siemens, so he has attempted to establish his case with circumstantial evidence, relying on the familiar *McDonnell Douglas* burden-shifting model. *See Baron,* 195 F.3d at 339 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d

---

**5.** 29 U.S.C. § 631 protects those who are 40 years of age and older against age discrimination.

668 (1973)). The *McDonnell Douglas* framework necessitates a three-step inquiry:

> First, a plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a legitimate nondiscriminatory reason for discharging the plaintiff. Finally, the plaintiff must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Wilson,* 167 F.3d at 1119.

In order to establish a prima facie case of age discrimination under the ADEA, the plaintiff must establish that: "(1) he was within the protected class [over forty years of age]; (2) he was performing his job to the employer's legitimate expectations; (3) he was discharged; and (4) [Siemens] hired someone else who was substantially younger or other such evidence that [demonstrates] that it is more likely than not that his age ... was the reason for the discharge." *Robin,* 200 F.3d at 1090. Neither party disputes the trial court's finding that the plaintiff proved a prima facie case of age discrimination under the ADEA or that Siemens articulated a legitimate, nondiscriminatory reason for discharging Andree. Rather, the plaintiff argues that the court committed error when concluding that he failed to establish, as a matter of law, that the reason given by the defendant for discharging Andree was a pretext for discrimination. *See McDonnell Douglas Corp.,* 411 U.S. at 804, 93 S.Ct. 1817.

## D. Pretext

"This Court has previously defined 'pretext' as a lie or a phony reason for an employment decision." *Baron,* 195 F.3d at 341. "[P]retext requires more than a showing that the business decision was 'mistaken, ill considered or foolish,' and we have held that so long as the employer 'honestly believed' the reason given for the action, pretext has not been shown." *Franzoni v. Hartmarx Corp.,* 300 F.3d 767, 772 (7th Cir.2002) (quoting *Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir. 2000)). An employee may refute a proffered reason for discharge by demonstrating that: "(1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the discharge; or (3) the proffered reasons were insufficient to motivate the discharge." *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 919 (7th Cir.1996); *accord Grube v. Lau Indus., Inc.,* 257 F.3d 723, 730 (7th Cir.2001); *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 428 (7th Cir.1989).

■ Plaintiff Andree alleges that age was the actual motivation for his discharge, rather than his "falsifying call reports" as maintained by Siemens. (Tr. 285.) The flaw in the plaintiff's theory is that the record, even when viewed in the light most favorable to Andree as we must at this stage, *Murray,* 252 F.3d at 887, is devoid of evidence, other than the plaintiff's self-serving assertions, refuting Siemens' proffered reason for discharging him. The evidence established that the plaintiff fraudulently listed at least seven people on his call reports that were unavailable on the occasions he reported having seen them. Andree admitted his falsification of the reports in the August 9, 1999, meeting with his supervisors and again at trial. Thus, we see no reason to doubt that the inaccuracies in Andree's call reports were the motivating factor for his

discharge and fail to understand the plaintiff's basis for making an allegation of age discrimination, given that Siemens bent over backwards to avoid terminating him despite his poor job performance. After numerous (3) warnings (from August 19, 1998, to July 1, 1999) that the failure to improve his work performance could result in his discharge, Siemens gave Andree the chance to attend additional training sessions to improve his technical skill. The fact that Andree was discharged for falsifying his call reports and not because of the unsatisfactory execution of his duties simply establishes that the filing of false and fraudulent reports in the business world is a very proper and accepted cause for termination, and obviously more serious than inadequate or poor job performance.

Further evidence reveals the validity of Siemens' proffered reason for discharging Andree, to the effect that two of his co-workers testified that in the past when they had listed a person on a call report, it meant that they actually communicated with that individual in person on the designated day, and that if they were caught lying on their call reports, they would have expected to be "disciplined." Certainly, no well-organized firm or business can continue to operate in an efficient manner if their employees file false reports. In fact, Andree admitted as much when he acknowledged that Siemens had a "right to expect its employees to be honest" and to terminate them if they broke that trust.

Andree's argument that the court failed to consider his high ratings as an employee in 1997, his merit-based pay increase in 1998, and his sales record [6] is equally devoid of merit because the plaintiff's satisfactory job performance early on in his employment is of no consequence; "What matters is whether [Andree] was meeting his employer's expectations *at the time of his discharge*"-August 30, 1999. *Anderson,* 965 F.2d at 401; *accord Cengr v. Fusibond Piping Systems, Inc.,* 135 F.3d 445, 453 (7th Cir.1998). We have previously explained that,

> Whether one is qualified may change from time to time. The fact that an individual may have been qualified in the past does not mean that he is qualified at a later time. We must focus, therefore, upon [Andree's] performance at the time of his termination.

*Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 336 (7th Cir.1991); *see also Rand v. CF Indus. Inc.,* 42 F.3d 1139, 1146 (7th Cir.1994). Andree has failed to refute the overwhelming evidence that at the time of his discharge, Siemens was dissatisfied with his filing of the false call reports, and obviously his employer had knowledge of the inadequacies of his technical skill.

We have often reiterated that this Court "do[es] not sit as a super-personnel department that reexamines an entity's business decisions." *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir. 1988) (internal quotations omitted). Rather, our inquiry is limited to whether the plaintiff-appellant has set forth a "legally sufficient evidentiary basis for a reasonable jury" to disbelieve the reasons proffered by Siemens for his discharge; we hold that he has not. Fed R. Civ. P. 50(a)(1); *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Rivas Rosado v. Radio Shack, Inc.,* 312 F.3d 532, 535 (1st Cir.2002).

## *IV. Breach of Contract*

Andree also filed a claim for breach of contract and states that he is entitled to

---

**6.** As of June 30, 1999, Andree had a sales record in the top 10% of the company.

$44,265 in commissions, which Siemens offered him-but he refused to accept-in exchange for a release from any and all legal claims, according to the terms of the company's written Sales Compensation Plan. The district court granted Siemens' motion for summary judgment finding that Andree failed to establish that the parties had a contract providing for the commissions. We review a grant of summary judgment *de novo. Palmer v. Marion County,* 327 F.3d 588, 592 (7th Cir.2003). After reviewing the evidence and hearing the arguments presented, we are convinced that the court properly granted Siemens' motion for summary judgment.

■ Under Wisconsin law, "[t]he burden of establishing the existence of a contract is on the person attempting to recover for its breach." *Household Utils., Inc. v. The Andrews Co.,* 71 Wis.2d 17, 236 N.W.2d 663, 669 (1976); *accord Perritt Ltd. P'ship v. Kenosha Unified Sch. Dist. No. 1,* 153 F.3d 489, 493 (7th Cir.1998). The plaintiff claims that the written Sales Compensation Plan, in which all Siemens' Account Managers were eligible to participate, entitles him to the commissions in dispute, but the plan cannot be interpreted in that way. In fact, the plan expressly disavowed any right to receive "incentive payments":

> Participation in this plan does not in any way represent an explicit or implied right to receive an incentive payment pursuant to the terms of this plan. Incentive payments are based on management's discretion with respect to performance and contributions.

(Ex. 10.) In sum, Andree has utterly failed to present any evidence that the parties entered a written or oral contract providing for the payment of commissions.

## V. Unjust Enrichment

In the alternative to his breach of contract claim, Andree argued that the company was unjustly enriched when it refused to pay him $44,265 in commissions that the plaintiff alleges he has earned. The trial court concluded that Andree abandoned this cause of action when he failed to respond to Siemens' motion for summary judgment on this issue. We agree, and further note that, "A party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Robyns v. Reliance Std. Life Ins. Co.,* 130 F.3d 1231, 1237 (7th Cir.1997). Thus, we see no reason to deviate from the well established rule "that a plaintiff waives the right to argue an issue on appeal if [he] fails to raise the issue before a lower court." *Id.* at 1238; *accord Palmer,* 327 F.3d at 597.

■ In response to Siemens' motion for summary judgment, Andree did assert a right to recover under the theory of quantum meruit. However, Andree failed to list a quantum meruit claim in his complaint. The complaint must give notice of the plaintiff's claims. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Contrary to Andree's assertion, "unjust enrichment" is not a generic term for "quantum meruit." *Ramsey v. Ellis,* 168 Wis.2d 779, 484 N.W.2d 331, 333 (1992) ("[Q]uantum meruit is a distinct cause of action from an action for unjust enrichment, with distinct elements and a distinct measure of damages."). Thus, the district court properly refused to entertain Andree's quantum meruit argument because he failed to plead such a claim in his complaint.

AFFIRMED.