Denton HOYT, Joseph B. Ortwerth, Charles R. Kreye, Cole A. Birkel, Chad Doyle, Kristine Deiss, Sean M. Funk, Philip Halverson, Jeffery Ernest Hines, Brent M. Howe, Lance Hove, James T. Koehler, Kenneth Kilmer, Douglas W. McCluskey, Jim McCoy, Gary Nelson, Gregory B. Nelson, Christopher O'Connell, Steven M. Ritchie, Brian J. Wiskerchen And Phillip Wooding, Plaintiffs,

v.

ELLSWORTH COOPERATIVE CREAMERY, Defendant.

No. 07–cv–386–jcs.

United States District Court, W.D. Wisconsin.

Jan. 10, 2008.

Nathan Dane Eisenberg, Jill Hartley, Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C., Milwaukee, WI, for Plaintiffs.

Ryan J. Steffes, Thomas J. Misfeldt, Weld, Riley, Prenn & Ricci, S.C., Eau Claire, WI, for Defendant.

## MEMORANDUM AND ORDER

JOHN C. SHABAZ, District Judge.

Plaintiffs Denton Hoyt, Joseph Ortwerth, Charles Kreye and Cole Birkel (collectively "originally named plaintiffs") commenced this action against defendant Ellsworth Cooperative Creamery ("Ellsworth") alleging that defendant violated both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and Wisconsin wage law, Wisconsin Statute § 109.03. Since this action began others similarly situated as the originally named plaintiffs have opted into the lawsuit (hereinafter both groups are referred to collectively as "plaintiffs") by filing consent forms. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1367. The matter is currently before the Court on defendant's motion for summary judgment. The following facts are undisputed unless otherwise stated.

## BACKGROUND & FACTS

Ellsworth is a Wisconsin stock cooperative that produces cheese curds, cheese products, whey and other dairy goods from milk provided by the 512 members of the cooperative. All plaintiffs are or were employees of Ellsworth within the last three years proceeding this lawsuit. All production and maintenance employees at Ellsworth are union members of the Teamsters Local 662.

Although housed in the same facility, Ellsworth's creamery plant (the "Creamery") is divided into a cheese side and a whey side. The whey department supervisor is Bernie Larson and he obtained the position in August of 2006 after the previous supervisor, Duane Brenne, passed away. At all times pertinent to this lawsuit Douglas Volenec was the cheese department supervisor and Joseph Hines was the Plant Superintendent in charge of both department supervisors; also, Kenneth McMahon was the Chief Executive Officer who supervised Hines.

The Creamery operates 24 hours a day and most of the machinery is in continual operation seven days per week. Employ-

ees are scheduled to work 8–hour shifts. Employees punch-in prior to the start of their shifts and punch-out prior to leaving the Creamery after completing their shifts at a time clock located on the production floor. The time clock records the month and day as well as an employee's punch-in and punch-out time to the minute. Employees have time cards that are used in conjunction with the time clock and the cards contain an employee's name and number. The time cards have spaces on the right side to punch in and out for regular time and spaces on the left side to punch in and out for extra work or overtime.

Ellsworth requires its employees to wear sanitary/safety uniforms and to change into and out of the uniforms at the Creamery in satisfaction of customer demands and Wisconsin Department of Agriculture, Trade and Consumer Protection regulations. The sanitary/safety uniforms consist of clean pants, a clean shirt, a hairnet and a hard hat. Ellsworth provides its employees with the necessary clean pants and clean shirt everyday. Employees are prohibited from taking the uniforms home. Although changing time inevitably varies from employee to employee, it is estimated that it takes between 30 seconds and 5 minutes to change into and out of the uniform. Typically, employees punch-in before changing into their uniforms and punch-out after changing out of their uniforms.

In general, Ellsworth uses employee punch-in and punch-out times to identify when an employee is at the Creamery and not to measure the time an employee was actually working which means that Ellsworth does not pay its employees for all the time recorded on the time cards. Instead, at the end of the work week the cheese and whey supervisors use the scheduled 8 hour shift time to calculate an employee's daily hours actually worked and then they handwrite that number on the employee's time card. When an employee punches in on the regular time portion of his time card before his normal 8 hour shift is scheduled to begin or punches out on the regular time portion of his time card after his normal 8 hour shift is scheduled to end such excess time is not considered when calculating the employee's hours actually worked unless the employee obtained approval from his supervisor to have the time included in hours actually worked. However, when an employee punches in or out on the overtime side of the time card and obtains authorization from a supervisor for working such overtime then the actual time punched on the time card is used to calculate hours actually worked.

Prior to the beginning of this lawsuit defendant had no written policies that addressed employees starting and stopping work. Some employees would regularly arrive at the Creamery between 20 to 40 minutes prior to when their shift was scheduled to start. Employees were required to continue production work until their relief arrived at the Creamery.

Until July 2007 Ellsworth permitted employees to "swap" shifts by allowing one employee to "hire" another employee to cover the first employee's shift. When an employee was "hired" by another employee to cover a shift Ellsworth would pay the employee who had been scheduled to work the shift, not the employee who actually worked the shift. Then the employee who was paid but had not actually worked was expected to pay the employee who had actually worked the shift.[1]

---

1. The Court does not address shift "swapping" in its memorandum because Ellsworth concedes that this shift "swapping" practice violated the FLSA and all that remains to be decided is which damages, if any, plaintiffs suffered due to shift "swapping."

## MEMORANDUM

Under Federal Rule of Civil Procedure 56 summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Goldstein v. Fidelity & Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir.1996) (*citing* Fed.R.Civ.P. 56); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The district judge's function in a summary judgment motion "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Additionally, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248, 106 S.Ct. 2505. Furthermore, all reasonable inferences from undisputed facts should be drawn in favor of the nonmoving party. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir.1999).

However, the nonmoving party cannot simply rest upon the pleadings once the moving party has made a properly supported motion for summary judgment; instead the nonmoving party must submit evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Essentially, it becomes the nonmoving party's burden to demonstrate that there is a genuine issue of material fact, i.e., that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

Defendant has moved for summary judgment on plaintiffs' FLSA claims. At the core of plaintiffs' allegations is that defendant violated the FLSA by failing to fully compensate plaintiffs for all the time they spent working at defendant's Creamery. Defendant rebuts plaintiffs' allegations by arguing that it has complied with all FLSA requirements and paid plaintiffs for all time spent actually working. At issue is whether defendant has in fact complied with applicable FLSA requirements and whether certain time plaintiffs spent at the Creamery was "work" for which they should have received compensation.

▆▆▆▆ The purpose behind the FLSA is to make sure that workers can maintain "the minimum standard of living necessary for health, efficiency, and general well-being." 29 U.S.C. § 202(a). To serve this purpose a core requirement under the FLSA is that "employers must pay their employees a wage for all the 'work' that they do." *Spoerle v. Kraft Foods Global, Inc.*, 527 F.Supp.2d 860, 862 (W.D.Wis. 2007) *(citing* 29 U.S.C. §§ 206 & 207). An employee who brings an FLSA action for " 'unpaid minimum wages or unpaid overtime compensation ... has the burden to prove that he performed work for which he was not properly compensated.' " *Adams v. United States*, 471 F.3d 1321, 1326 (Fed. Cir.2006) *cert. denied,* —— U.S. ——, 128 S.Ct. 866, 169 L.Ed.2d 723 (2008) (alteration in original) *(quoting Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded in part by statute*, 29 U.S.C. § 254). However, this burden is not intended to be "an impossible hurdle for the employee." *Mt. Clemens Pottery Co.*, 328 U.S. at 687, 66 S.Ct. 1187.

▆▆▆▆ One of defendant's arguments is that it is entitled to summary judgment because the time plaintiffs spent donning and doffing hair nets and hard hats is not "work" under the FLSA. While the FLSA does not define the term "work," a general rule has arisen from the case law "that an employee must be paid for all time spent in physical or mental exertion, whether burdensome or not, controlled and required by the employer, and pursued nec-

essarily and primarily for the benefit of the employer or his business." *Sehie v. City of Aurora*, 432 F.3d 749, 751 (7th Cir.2005) (citations and internal quotations omitted). This general rule has been further broadened so that "there need be no exertion at all, and that all hours that the employee is required to give his employer are hours worked, even if they are spent in idleness." *Id.* (*citing Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944)). Because under the undisputed facts plaintiffs are required by defendant, i.e., their employer, to wear hairnets and hard hats in satisfaction of defendant's customers' demands as well as state law all such activities performed by plaintiffs are as a matter of law considered "work" under the FLSA.

■ Defendant also argues that it is entitled to summary judgment based on several exceptions to the general requirement that all employees be paid for their work. First, defendant argues that the time plaintiffs spent changing into and out of their sanitary/safety uniforms is de minimis. The de minimis exception is rooted in *Mt. Clemens Pottery Co.* where the Supreme Court noted that "[i]t is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved." 328 U.S. at 692, 66 S.Ct. 1187.

However, the Supreme Court did not go into detail about applying the de minimis exception but instead left the issue to the trier of fact, and since then (i.e., since 1946) the Supreme Court has not addressed the application of the exception again. *Id.; see also Spoerle*, 527 F.Supp.2d at 868. Although the Seventh Circuit has not addressed the de minimis exception, other circuit courts have. Specifically, this Court finds the Ninth Circuit's application of the de minimis exception in *Lindow v. United States* persuasive

and reasonable to follow. 738 F.2d 1057 (9th Cir.1984).

■ In *Lindow* the Ninth Circuit set forth a four factor framework when applying the de minimis exception in FLSA cases. *Id.* at 1062–64. The first factor is "the amount of daily time spent on the additional work." *Id.* at 1062. Although many courts have found daily periods of approximately 10 minutes to be de minimis, no rigid rule using mathematical certainty should be applied. *Id.* Instead "common sense must be applied to the facts of each case." *Id.* The second factor is "the practical administrative difficulty of recording the additional time." *Id.* at 1063. The third is "the aggregate amount of compensable time." *Id.* And the fourth is "the regularity of the additional work." *Id.*

■ The parties do not dispute that although the amount of time it takes each employee to change varies from employee to employee it can be estimated that changing time ranges from 30 seconds to 5 minutes (Def.'s Proposed Finding of Fact and Conclusions of Law ¶ 28), which at its maximum is approximately 10 minutes per day for changing time. Spending approximately 10 minutes per day changing may weigh in favor of the time being considered de minimis. However, despite defendant's focus on 10 minutes per day being a small amount of time, the amount of time is not a dispositive factor but merely one of four factors. Furthermore, there is no rule that as a matter of law 11 minutes is not de minimis but 10 minutes is de minimis.

■■ As for the second factor, defendant does not present any evidence to suggest any practical administrative difficulty in recording the extra time. Furthermore, based on the current record it is arguable that there would be no administrative difficulty in recording the extra

time because the time spent changing is already recorded as most employees punch-in before changing and punch-out after changing. As Judge Crabb noted in *Spoerle*, "when providing compensation for a task imposes no additional burden on the employer, there is no justification for denying the employee compensation for that task, regardless how fast the task was performed." 527 F.Supp.2d at 869. Accordingly, a reasonable jury could find that the second factor weighs against the time at issue being de minimis.

The Court need not discuss the third and fourth factors because the defendant's failure to provide evidence that there would be any practical administrative difficulty in recording the extra time prevents the Court from concluding that plaintiffs' time spent changing is de minimis as a matter of law.

Defendant next argues that the time plaintiffs spent changing into and out of sanitary/safety uniforms should be excluded from being considered "hours worked" based on the definition of "hours worked" given under 29 U.S.C. § 203(*o*). The FLSA defines "hours worked" as follows:

In determining for the purposes of section 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C § 203(*o*). For plaintiffs' activities of changing into and out of their sanitary/safety uniforms to satisfy this definition (i.e., be excluded from being considered hours worked) two questions must be answered (1) do plaintiffs' activities constitute "changing clothes"; and if so (2) is "changing clothes" excluded from compensation based on a "custom or practice"[2] exercised under the collective bargaining agreement.

■■■ Plaintiffs argue that changing into and out of their sanitary/safety uniforms constitutes donning and doffing sanitary and safety equipment which is not "changing clothes" under § 203(*o*). Conversely, defendant's argument has three steps (1) that plaintiffs' donning and doffing hairnets and hard hats is excluded from being considered a part of changing their sanitary/safety uniforms, (2) that the uniforms are merely a clean shirt and clean pants and (3) that changing a shirt and pants clearly constitutes "changing clothes." Defendant provides no reasoning, and the Court is aware of none in the record, to support excluding hairnets and hard hats from being considered a part of the overall sanitary/safety uniform. Accordingly, the Court finds that the sanitary/safety uniform includes a clean shirt, clean pants, a hairnet and hard hat.

■■■ In arguing whether plaintiffs' sanitary/safety uniforms are "clothes," neither party attempts to define the term "clothes." Furthermore, the FLSA fails to define the term "clothes." The case law is mixed with some courts accepting a broad definition of "clothes" to include anything that covers the body, while other courts reject such a broad definition. *See Spoerle*, 527 F.Supp.2d at 866–67. This Court finds the definition and reasoning used by the court in *Spoerle* to be reasonable and will use such reasoning accordingly.

2. The parties do not dispute that the express terms of the collective bargaining agreement do not exclude "changing clothes" from compensation.

In *Spoerle* Judge Crabb used the definition and reasoning from *Fox v. Tyson Foods, Inc.*, No. CV–99–BE–1612–M, 2002 WL 32987224, at *6–7 (N.D.Ala. Feb. 4, 2002), to explain that

> The donning of [sanitation and safety] equipment is much different than the time spent by a police officer putting on a uniform and strapping on a holster. The uniform is "clothes" because it takes the place of the clothing the officer was wearing before work. Furthermore, ... a police officer may drive to work in his uniform.... The equipment at issue here cannot be regarded as mere analogs to everyday clothing, like a uniform might be; the equipment is necessary not for the convenience or modesty of the employee, but required for the very specific needs of the employer for sanitation and safety.

2007 WL 4564094, at *7 (alterations in original). Judge Crabb went on to point out several reasons in support of why donning and doffing sanitation and safety equipment on the work site is different from merely "changing clothes." *Id.* at *8. Those reasons can be broken down into: (1) activities performed for the employer; (2) activities performed for a uniquely job-related purpose; (3) activities performed under the employer's control; and (4) the safety-related purpose of the equipment. *Id.*

In this case, although part of plaintiffs' sanitary/safety uniforms consist of merely a shirt and pants, they are not similar to everyday clothing worn for plaintiffs' convenience. Instead plaintiffs' uniforms are required to satisfy defendant's very specific needs for sanitation and safety. Furthermore, the uniforms have to be donned and doffed at the Creamery, they are cleaned by defendant, they are required by defendant and they must be worn to help ensure that defendant's products are sanitary in satisfaction of defendant's customers' demands and state law. Based on the reasoning in *Spoerle* and the undisputed facts in the record the sanitary/safety uniforms plaintiffs don and doff cannot as a matter of law be "clothes" under 29 U.S.C. § 203(*o*). Because plaintiffs' donning and doffing sanitary/safety uniforms cannot be "changing clothes" under 29 U.S.C. § 203(*o*) then such donning and doffing cannot be excluded from being considered compensable "hours worked."

Defendant also raises the argument that under Section 4 of the Portal-to-Portal Act (i.e., 29 U.S.C. § 254) it is not liable to compensate plaintiffs for donning and doffing their sanitary/safety uniforms because such activities are "preliminary" to or "postliminary" to plaintiffs' "principal activity" at the Creamery and as such the activities are not compensable under the FLSA. In determining whether an activity is preliminary or postliminary the focus of the analysis is not on when the activities are performed but whether they are an integral and indispensable part of the employee's principal activities. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29–30, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) (*citing Steiner v. Mitchell*, 350 U.S. 247, 252–53, 76 S.Ct. 330, 100 L.Ed. 267 (1956)). Furthermore, the Supreme Court has implicitly agreed with lower court determinations that employees donning and doffing clothing and equipment that they were required to wear by their employer and/or government regulation was integral and indispensable to their principal activities. *Id.* at 32–33, 37–38, 126 S.Ct. 514. The Supreme Court went even further holding that the time employees spent walking to and from the production floor after donning and before doffing required uniforms and gear was integral and indispensable to their principal activities and accordingly not excluded under Section 4 of the Portal-to-Portal Act. *Id.* at 39, 126 S.Ct. 514.

In this case, it is undisputed that defendant requires its employees to don and doff their sanitary/safety uniforms at the Creamery. It is further undisputed that defendant places this uniform requirement on its employees because of its customers' demands as well as it being compelled to satisfy Wisconsin Department of Agriculture, Trade and Consumer Protection regulations. Accordingly, based on the undisputed facts plaintiffs' donning and doffing required sanitary/safety uniforms is as a matter of law integral and indispensable to their principal activities and is not excluded from being compensable work as preliminary or postliminary under Section 4 of the Portal–to–Portal Act.

■ Defendant's other arguments in support of summary judgment have to do with its record keeping and rounding of plaintiffs' hours actually worked. Defendant argues that it properly and accurately recorded plaintiffs' hours actually worked and that it correctly rounded plaintiffs' work times to the closest quarter of an hour. However, plaintiffs have raised several genuine issues of material fact, i.e., presented sufficient evidence favoring their position that could allow a jury to return a verdict in their favor. Plaintiffs provide evidence of discrepancies between plaintiffs' time clock punch-in/punch-out times and the handwritten times recorded on the time cards that signify hours actually worked. Such discrepancies raise doubts about the accuracy of defendant's records. *See* 29 C.F.R. § 785.48(a).[3]

Furthermore, the consistency and application of defendant's policy concerning the rounding of plaintiffs' hours actually worked is inseparably tied to the records of plaintiffs' hours actually worked. Accordingly, the potential inaccuracy of the records necessarily raises doubt as to whether defendant's rounding policy was fully compensating plaintiffs' for all the time they actually worked. *See* 29 C.F.R. § 785.48(b).

Moreover, plaintiffs have presented evidence that defendant had a verbal policy requiring plaintiffs to be at the Creamery and punched-in at least 10 minutes before the start of their shift so they could be to their work stations and ready to work when their shift began. (Hoyt Dep. 22; Birkel Dep. 13; Kreye Dep. 36; White Aff. ¶ 6.) Plaintiffs also presented evidence that before the scheduled start time of their shift but after they were punched-in on the time clock they would spend time obtaining information from co-workers about what was happening in the Creamery (i.e., any problems or concerns with machinery, etc.) in preparation to start their shifts. (Birkel Dep. 19; Hoyt Dep. 28–29.)

Plaintiffs argue that they should be compensated for the time after punching in but before the scheduled start of their shift when that time was spent complying with defendant's alleged verbal policy and/or obtaining information from co-workers necessary for beginning their scheduled shifts. Defendant disputes plaintiffs' assertions and argues that it never had any 10 minute pre-shift arrival policy and that it has compensated plaintiffs for all hours they actually worked. These disputes create genuine issues of material fact as to whether plaintiffs were compensated for all hours actually worked as required under the FLSA.

**3.** Despite defendant's argument to the contrary, this regulation applies to defendant. Although defendant argues that the regulation does not apply because defendant does not use the time from its time clock to keep records of hours actually worked the regulation by its terms does not differentiate in its application depending on how a time clock is used by an employer. Instead the regulation merely states, "[i]n those cases where time clocks are used" and the undisputed facts support that defendant uses a time clock.

In conclusion defendants have failed to prove that based on the undisputed facts they are entitled to summary judgment as a matter of law on plaintiffs' FLSA claims. Furthermore, plaintiffs' have raised genuine issues of material fact concerning several of its FLSA claims. Accordingly, defendant's motion for summary judgment must be denied.

### ORDER

IT IS ORDERED that defendant's motion for summary judgment is DENIED.